**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**STANTON ENTERPRISES, INC., doing business as Holiday Inn of Charleston, Respondent.**

**No. 9849.**

United States Court of Appeals Fourth Circuit.

Argued June 4, 1965.

Decided Sept. 30, 1965.

Wayne S. Bishop, Atty., N. L. R. B.
(Arnold Ordman, Gen. Counsel, Dom-
inick L. Manoli, Associate Gen. Counsel,

Marcel Mallet-Prevost, Asst. Gen. Counsel, and Gary Green, Atty., N. L. R. B., on brief), for petitioner.

George V. Gardner, Washington, D. C. (Frederick F. Holroyd, Charleston, W. Va., on the brief), for respondent.

Before SOBELOFF and J. SPENCER BELL, Circuit Judges, and WINTER, District Judge.

SOBELOFF, Circuit Judge.

Shortly after the Holiday Inn of Charleston, West Virginia, opened its motel for business in December, 1962, the union sought to organize the waitresses, maids, cooks and other employees. By April, 1963, it had successfully petitioned the Board for a representation election. The company apparently was unaware of the union's campaign until it received notification from the Board that an election would be held. Admittedly, this employer was opposed to unionization of its staff, and Lyman Stanton, its president, told the union agent that he was going to fight the union to the "bitter end." True to his word, President Stanton, both directly and through his assistant manager, Mrs. Baldwin, and his banquet manager, Mrs. Koon, waged a vigorous anti-union campaign.[1]

■ Within proper limits an employer is free to oppose a union's organizational efforts among his employees. The Board concluded, however, that Stanton Enterprises exceeded the bounds of legitimate persuasion by unlawfully interrogating employees as to their union activity, and threatening them with economic reprisals if they should select the union, in violation of section 8(a) (1) of the National Labor Relations Act, 29 U.S.C.A. § 158(a) (1) (1965). The Board further found that the company violated sections 8(a) (3) and (1) of the Act by discharging eight waitresses for their support of the union. The Board has petitioned for enforcement of its order requiring the employer to cease and desist from its illegal conduct, to reinstate the discharged waitresses, and to indemnify them for lost earnings.

## 8(a) (1) Violations

At the outset of the organizational campaign, Stanton directed Mrs. Koon to discourage the waitresses from joining the union and to inform them that if they voted for the union their wages would be cut and "No Tipping" signs posted, thereby depriving them of a substantial portion of their income. He also told Mrs. Koon that if he found that any of the waitresses had signed union authorization cards, he would fire them. Mrs. Koon testified that she relayed Stanton's statements, as requested, to the waitresses and questioned several of them as to whether they were among those who had signed such union cards. The assistant manager, Mrs. Baldwin, also questioned the maids concerning their union activities and repeated Stanton's threats to post "No Tipping" signs and cut salaries if the union won the election.

The trial examiner found this conduct in "technical" violation of section 8(a) (1) but did not recommend a cease and desist order, expressing the view that it "would not effectuate the policies of the Act." The Board took a different view of the violations found by the examiner, deeming them not merely "technical" but expressly designed to ferret out and punish union supporters in flagrant disregard of their statutory rights.

■ The Board's conclusion rests upon an ample basis in the record. It is clear beyond question that the employer threatened and intimidated its employees and such was the examiner's finding. The examiner's recommendation of dismissal of the 8(a) (1) charge upon his view of the conduct as merely technical does not diminish the substantiality of the evidence as support for the Board's order. It is the function of the Board, not its examiner, to determine what policies will effectuate the Act's purposes. Universal Camera Corp. v. NLRB, 340

---

1. The details are fully reported as 147 NLRB 81 (1964).

U.S. 474, 494, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

▮▮▮ There is no merit in the employer's contention that the statements in question were mere prophecies, and therefore protected by the free speech proviso of section 8(c). Since some of the waitresses worked for tips only, the Board could have no great difficulty in perceiving a coercive design in such a "prophecy." Indeed, in this case, the examiner no less than the Board declared the statements made to the waitresses violative of section 8(a) (1), though he was disposed to judge them more leniently. Threats not infrequently are conveyed by euphemistic speech, as a bank teller is addressed in language quite traditional, "hand over the money and nobody will get hurt." The minatory message is well understood despite its mild form. The example is cited not to suggest that the offenses are of equal gravity but that the defenses are equally invalid. Whether language used by an employer is coercive is to be determined by the experienced judgment of the Board in light of the surrounding circumstances. Daniel Construction Company v. NLRB, 341 F.2d 805, 811 (4th Cir. 1965). Threats are not immunized by section 8(c), and it is toying with language and a misuse of the soft word "prophecy" to apply it to the communications disclosed in this record.[2] Here the conclusion that the language constituted a threat of economic reprisal has a solid foundation in the record.

### 8(a) (3) and (1) Violations

▮▮▮ We are also called upon to review the Board's decision as to the employer's motivation in discharging and laying off eight waitresses who had joined the union. The trial examiner found that they were discharged for reasons within the prerogative of management and unconnected with the employees' union activities. The Board, however, took into account the flagrant inconsistencies and contradictions in the employer's explanations for the discharges as well as the general background of hostility toward the union manifested in several ways, and rejected the inferences and conclusions drawn by its examiner.[3] It found that the waitresses were dismissed for their support for the union, in violation of sections 8(a) (3) and (1) of the Act.

There was a considerable mass of evidence tending to show that the waitresses were discharged for their union activity and not for the reasons advanced by the employer, either initially to the waitresses individually as they were dismissed, or later to the Board. The testimony unfolded that, during the weeks immediately preceding the Board election, there was an intensified drive to determine the identity of the persons who had signed union authorization cards. Stanton learned that only waitresses had signed them, but he was unable to discover which individuals were involved. He called Mrs. Baldwin and Mrs. Koon into his office and told Mrs. Baldwin that "he felt that she should go in and clean house, get rid of the waitresses and hire an entirely new crew * * *." He said, "you have no way of knowing who did and who didn't [sign cards]. Let's clean house and we will get the guilty parties." When Mrs. Baldwin pointed out, "we can't just fire them because we think they signed union cards; we have to have a reason," Stanton directed her to "find a reason." Rising to the occasion, Mrs. Baldwin suggested, "well, I have cautioned them about smoking in the rear of the dining room. I will go through one day soon and find

---

2. See generally Pokempner, Employer Free Speech Under the National Labor Relations Act, 25 Md.L.Rev. 111, 129–133, 135–136 (1965).

3. As it is the Board's decision and not the examiner's which we review, it is sufficient if there is substantial supporting evidence for the Board's conclusion, even if it conflicts with that of the examiner. Universal Camera, supra; NLRB v. Southland Cork Co., 342 F.2d 702, 708 (4th Cir. 1965); Daniel Construction Company, supra, 341 F.2d at p. 813, n. 6.

about six smoking and I will fire them for that reason."

Later, when the waitresses were informed of their discharge, each asked Stanton for the reason. One was told that she smoked too much in the kitchen, although she was not and had never been a smoker. Three others were told that they were being discharged because of an "overloaded payroll," yet replacements for all were hired within a few days. The reasons given others were, variously, using "foul language," lateness, and complaints about the food. However, none had previously been reprimanded, warned, or even accused in respect of such conduct. When, finally, the matter came on for hearing before the examiner, the employer maintained that several of the waitresses had been fired for hugging and kissing the cooks in the kitchen and other misconduct while on duty. This explanation was at variance with that given by Stanton to the waitresses when they were discharged.

Upon careful consideration of the record and taking into due account the divergent views of the Board and the examiner, we are of the opinion that the Board was well warranted in concluding that the discharges were not made for independent business reasons, as urged by the employer, but as punishment for the waitresses' concerted and legally protected activities and to discourage unionization among the employees. This is a plain incursion of the employees' rights under the Act.

### Remedy

The employer complains of the award of back pay for the interval between the examiner's decision and its reversal by the Board. While it is true that for a time it was the Board's policy to toll monetary awards during such periods, it has abandoned this practice in favor of making injured employees whole for their losses. A. P. W. Products Co., 137 N.L.R.B. 25 (1962). We find nothing arbitrary in the Board's making changes in its enforcement policy as ad-

ministrative experience from time to time may dictate. If the Board, in its continuing duty to oversee the enforcement process, finds that the more limited remedy it formerly applied is inadequate, it is not for a court to forbid a change in the Board's policy. Since there is no suggestion that the Board's action is oppressive or that the present employer was singled out for unique treatment, there is no basis for upsetting the order. The choice of an appropriate remedy is a proper function of the Board and not the courts. NLRB v. Seven-Up Bottling Co., 344 U.S. 344, 346–347, 73 S.Ct. 287, 97 L.Ed. 377 (1953).

The order will be

Enforced.