NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

R. J. SMITH CONSTRUCTION CO.,
INC., Respondent.

No. 71–1689.

United States Court of Appeals,
District of Columbia Circuit.

Oct. 27, 1976.

Paul Elkind, and Roger T. Brice, Attys., N.L.R.B., Washington, D.C., for petitioner.

Daniel W. Rudy and Franklin A. Morse, II, South Bend, Ind., for respondent.

Before McGOWAN, Circuit Judge, WINTER,* Circuit Judge for the United States Court of Appeals for the Fourth Circuit, and MacKINNON, Circuit Judge.

Opinion for the Court by WINTER, Circuit Judge.

Separate opinion concurring in part, and dissenting in part by MacKINNON, Circuit Judge.

WINTER, Circuit Judge.

The National Labor Relations Board (Board) petitions us to adjudge R. J. Smith Construction Co. (Company) in civil contempt of this court for having failed and refused, and for continuing to fail and refuse, to comply with our supplemental judgment of January 2, 1975, which we entered following our decision in *Local No. 150, International Union of Op. Eng. v. NLRB*, 156 U.S.App.D.C. 294, 480 F.2d 1186 (1973). Upon consideration of the Board's petition, the Company's response, the Board's motion to strike the Company's affirmative defenses, and other pleadings filed at our request, we adjudge the Company in civil contempt and enter an appropriate order.

### History of the Proceedings

In *Local No. 150,* we held that, as a proposition of· law, the Board erroneously concluded that the Company was not guilty of an unfair labor practice under § 8(a)(5) and (1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(5) and (1), when it refused to bargain collectively with the union with which it had executed a pre-hire contract, valid under § 8(f) of the Act, 29 U.S.C. § 158(f), before unilaterally altering the terms of the contract. The Board's theory was that an employer who had executed a pre-hire agreement under § 8(f) was not bound to observe it until the union had achieved majority status. We decided otherwise, and we remanded the case to the Board for entry of an appropriate order.

Pursuant to our remand, the Board issued a Supplemental Decision and Order finding that the Company had violated § 8(a)(5) and (1) by unilaterally altering the terms of its agreements and by refusing to bargain with the union as the representative of its employees. *Inter alia,* the Company was ordered to cease and desist from refusing to bargain collectively with Local No. 150 as the representative of the Company's employees and from making unilateral changes in wages, rates of pay, or other terms or conditions of employment without first reaching agreement with the union concerning such changes. The Company's

* Sitting by designation pursuant to 28 U.S.C. § 291(a) (1970).

motion for reconsideration and rehearing was denied, and then, when the Company refused to comply with the Board's order, the Company was informed that enforcement proceedings were being recommended. Without further notice to the Company, the Board filed a proposed supplemental judgment enforcing its supplemental order and embodying the latter's terms, and we entered it on January 2, 1975. Although our records fail to show that the supplemental judgment was served on the Company, the Company admits that it had notice and actual knowledge of our supplemental judgment since *at least* February 7, 1975.[1] The Company did not move to have it reconsidered or set aside by petition for rehearing, with or without a suggestion for rehearing in banc,[2] nor did it seek further review by a petition for certiorari.

### Admitted Facts

The facts alleged in the Board's petition, admitted to be true in the Company's response, are that on October 8, 1968, the Company and the union signed two memoranda of agreement, each containing clauses that the employer recognized the union as the sole and exclusive bargaining representative for the employees. Each memorandum adopted the terms and conditions of employment of a master agreement contained in a single document executed on June 1, 1966 by the union and the General Building Contractor's Association of South Bend and Mishawaka, Indiana, and the union and Sewer, Tunnel and Subway Contractors of South Bend and Mishawaka, Indiana, respectively. The expiration date of the master agreement was May 31, 1970. By their terms, the memoranda were effective as of October 8, 1968, and were to remain in effect for one year, and thereafter from year to year, unless terminated by the parties. Each party had the right to amend or terminate each memorandum by notice in writing at least three calendar months prior to its expiration. By their terms, the memoranda specifically adopted any subsequent agreement entered into between the union and the employer association "unless notice of termination or amendment is given" in accordance with the provisions of the memoranda.

Although the Board alleges that subsequent master agreements have been executed between the union and the respective associations, the Company neither admits nor denies these allegations. The legal effect of this answer is to put the Board to strict proof of the facts it alleged. Such proof is not in this record, but the point is of little significance for present purposes because the Company admits that it has never honored the terms of the October 8, 1968 memoranda or of the master agreement of June 1, 1966 (which by its terms continued to May 31, 1970), or of any subsequent master agreement with the union. The Company concedes that since November 1, 1968, it has repeatedly changed the wage rates of its employees without notice to or affording the union an opportunity to bargain thereon. Clearly, the Company has admitted a factual basis on which to find it in civil contempt, unless there is merit in one or more of its defenses. The wage rates fixed from time to time in any master agreements which may have been entered into from time to time to be effective after May 31, 1970, are significant only with respect to the computation of back pay. We have no doubt that, upon the Company's request, the Board, or the union, or both, will supply data to the Company with regard to master agreements covering the

---

1. The Company received some notice earlier. In its response to the Board's petition, the Company admits that it received a letter from the Board's Regional Director, under date of January 23, 1975, referring to a supplemental judgment of a court of appeals in the present case. The letter, however, incorrectly identified the court and the case number.

2. A petition for rehearing is required to be filed within fourteen days after entry of judgment "unless the time is shortened or enlarged by order." Rule 40, F.R.A.P. For "good cause shown," the time for filing a petition for rehearing may be extended without limitation. Rule 26(b), F.R.A.P. Rule 26(b) contains no provision requiring that the motion for an extension of time be made before the date fixed for the act to be done.

period after May 31, 1970, so that the Company can compute back pay.

The Company admits the various proceedings which have been taken before the Board and in this court. It admits also that in its Supplemental Decision and Order which we enforced by supplemental judgment, the Board ordered the Company, *inter alia*, to cease and desist from refusing to bargain collectively and from making unilateral changes in wages, rates of pay, or other terms or conditions of employment without collective bargaining and agreement resulting therefrom, and affirmatively to recognize the union, honor its memorandum agreements, and to make whole each affected employee for any loss of pay he may have suffered as a result of illegal unilateral changes since October 23, 1968.

Finally, the Company admits that, at all times, it has wholly failed and refused to comply with our supplemental judgment.

### Company Defenses

A. *Alleged Duress.*

The Company's first defense is that the collective bargaining agreements that it is accused of having unilaterally altered were entered into under coercion and duress, and that therefore the agreements are unenforceable against the Company so that the Company's failure to negotiate with the union before altering them cannot constitute a violation of § 8(a)(5) and (1). The Company does not allege the entire factual basis for its claim of coercion and duress, but it does quote a portion of the record made before the trial examiner in the instant case to the effect that the Company's president had been "having some problems" with the union's business representative and since the president had plans to be on vacation at a time when a construction job was about to start and he wished to avoid any possible interference by the union business representative, he signed the collective bargaining agreement "hoping that everything would be fine and we could get along then."

The defense was raised in the initial administrative proceedings. It was not decided by the trial examiner because he erroneously concluded, as did a majority of the Board, that an employer was not required to bargain collectively with the union with which he had contracted under § 8(b) unless and until the union achieved majority status. Although general counsel filed exceptions to the trial examiner's recommended decision and order in an effort to persuade the Board to reverse the trial examiner's legal conclusions, the Company filed no cross-exceptions to sustain the recommended decision on other grounds, including the claim of coercion and duress, should the Board agree with general counsel's legal arguments.

The Company had previously asserted this defense in a suit filed by the union, prior to its filing an unfair labor practice charge with the Board, which sought specific performance of the Company's collective bargaining agreements of 1968. The suit was instituted in the United States District Court for the Northern District of Indiana. The specific outcome of the case does not appear, but obviously the union did not obtain relief.

The coercion defense was asserted twice more: first, in a suit in the Northern District of Indiana instituted by the Company to restrain the unfair labor practice proceedings before the Board, in which the Company's prayer for injunctive relief was denied, and, second, in a suit instituted by the trustees of employees' benefit funds in the Northern District of Indiana to recover payments which the Company should have made under its collective bargaining contracts. Apparently the latter suit is still pending. Finally, the Company obliquely sought to raise the defense in a Motion for Reconsideration and Rehearing of the Board's Supplemental Decision and Order after remand of the case by us to it. That motion was denied.

B. *Termination of Memorandum Agreements Executed October 8, 1968.*

While the Company does not claim that it ever gave the formal notice of termination

required by either October 8 agreement, it asserts that the legal force and effect of the pleadings filed before the Board and in the several proceedings before the United States District Court for the Northern District of Indiana were to terminate the memorandum agreements as of May 31, 1970. In connection with this assertion, the Company contends that it has been denied its rights under the Administrative Procedure Act and the Due Process Clause of the Fifth Amendment to present its claim of termination adequately to the Board for adjudication.

### C. *Invalidity of "Make Whole" Order.*

The Company asserts that the portion of the Board's supplemental order requiring it to pay employees adversely affected by its illegal unilateral changes in wages violates the Board's established policy regarding the tolling of back pay awards. Specifically, it asserts that the award of back pay should be tolled from the date of the trial examiner's decision on March 9, 1970, when the trial examiner concluded, erroneously we have found, that the Company had a right to make unilateral changes in wages, rates of pay, or other terms or conditions of employment, notwithstanding its October 8, 1968 memorandum agreements.

### D. *Other Defenses.*

When we initially remanded this case to the Board, the Board indicated that it would comply with the remand but would reserve for future cases its position that an employer may not be found guilty of a refusal to bargain with respect to a union with which it has executed a valid § 8(f) pre-hire contract but which failed to achieve majority status. The Company asserts that such a reservation was in violation of the Administrative Procedure Act and the Fifth Amendment of the Constitution.

Another contention advanced is that the Company is financially unable to pay the amount of back pay which the Company estimates it will be ordered to pay and it would be forced to discharge the obligation by voluntary bankruptcy.

### *Legal Discussion and Decision*

At the outset, we express our disapproval of the Board's seeking a supplemental judgment to enforce its supplemental decision without service of the petition therefor on the Company. Of course, from what was decided in the main case, the petition for enforcement of the supplemental decision and order was largely *pro forma*. Nonetheless, in such cases we think that actual notice should be given to a respondent and the respondent should be afforded an opportunity to voice any objection to the issuance of a supplemental judgment that it be advised to interpose.

We do not think, however, that under the facts of this case any of the Company's constitutional rights were denied; nor do we think that we lacked jurisdiction. The supplemental proceedings were largely *pro forma*. The Company had adequate notice of entry of the supplemental judgment in time to seek to have the proceedings reheard by the panel, or by the court sitting in banc, or to seek review by the Supreme Court. The Company took no steps to disturb the judgment. We think this case is an appropriate one in which to invoke the well-established principle that, except for jurisdictional defects, the validity of a decree cannot be attacked in a contempt proceeding to effect obedience to it. In short, the Company will not be heard to question irregularities in its entry since procedural due process of law has not been denied. *Maness v. Meyers*, 419 U.S. 449, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975); *Walker v. Birmingham*, 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967); *Howat v. Kansas*, 258 U.S. 181, 42 S.Ct. 277, 66 L.Ed. 550 (1922).

We turn therefore to the Company's other defenses:

### A. *Duress.*

The Company's factual claim of coercion and duress borders on the frivolous. But even if we assume that the Company is able to tender proof that something

more than the Company's president's desire to take a vacation led him to execute the pre-hire agreements, we think that the Company has lost its right to claim this defense.

Coercion and duress were asserted in the Board's initial proceedings; but when the trial examiner decided the case in favor of the Company on a different ground, the Company filed no cross-exceptions to sustain the trial examiner's result on the ground of coercion and duress. Absent extraordinary circumstances which we do not find to be present, the Company's failure to press its claim on the Board in accordance with the Board's regulations, 29 C.F.R. §§ 102.46(b) and (e) and 102.48(a), results in the conclusion that the Company is foreclosed from pressing it on us under § 10(e) of the Act, 29 U.S.C. § 160(e). *Barton Brands, Ltd. v. NLRB*, 529 F.2d 793 (7 Cir. 1976); *NLRB v. Cast-A-Stone Products Company*, 479 F.2d 396 (4 Cir. 1973). *See also United States v. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37, 73 S.Ct. 67, 97 L.Ed. 54 (1952). The mere fact that the Company prevailed before the trial examiner does not constitute "extraordinary circumstances" justifying us from relieving it of its burden.

B. *Termination of Memorandum Agreements.*

■ The two pre-hire agreements provided how each could be amended or terminated. Each required notice in writing at least three calendar months prior to its expiration. "The time and manner of exercising a power of termination [cf a contract] may be specified in the contract; *in such case an attempt to exercise it otherwise will be ineffective* (emphasis added)." 6 Corbin on Contracts, § 1266, p. 65 (2d ed. 1962); 6 Williston on Contracts, § 887B, pp. 513–14 (3d ed. (Jaeger) 1962).

Since there is no claim that the Company gave notice of termination in the manner prescribed in the pre-hire agreements, they were not terminated in accordance with their provisions. The Company's pleadings before the Board and in collateral judicial proceedings may have been given the Union and the Board ample notice that the Company was loath to abide by its agreements, but they did not effect termination.

C. *"Make Whole" Order.*

[5] The Company advances no authority to support its position that the award of back pay to affected employees should be tolled from the date of the trial examiner's decision on March 9, 1970. We are aware that prior to 1962 it was the policy of the Board to toll back pay under certain circumstances. *See APW Products, Inc.*, 137 NLRB 25, 28–30 (1962). That policy was changed in 1962. *See NLRB v. A.P.W. Products Company*, 316 F.2d 899, 905–07 (2 Cir. 1963). *See also NLRB v. Stanton Enterprises, Inc.*, 351 F.2d 261, 265 (4 Cir. 1965).

The policy was further refined in *Ferrell-Hicks Chevrolet*, 160 NLRB 1692 (1966), and approved by the Seventh Circuit in *Golay and Company, Inc. v. NLRB*, 447 F.2d 290, 292–94 (7 Cir. 1971). In essence, the present policy is not to toll back pay awards, absent "special factors" which render back pay inappropriate to effectuate the policies of the Act. We perceive no special factors here. The Company should be held to its memorandum agreements for the entire period that it failed to pay wages and fringe benefits at the level fixed by the master agreement and any extensions or modifications thereof, especially when the record clearly reflects that the Company signed the memorandum agreements not intending to observe them and any benefit of nonobservance has been enjoyed by the Company for an extended period.

D. *Other Defenses.*

■ We see nothing improper in the Board's reservation of its rights to contest the correctness of our holding in *Local No. 150* should the same question arise in another circuit. The important thing is that, in the instant case, having decided not to seek further appellate review, the Board has complied with our holding.

■ We are aware of no authority which would exalt the Company's alleged precarious financial condition over the employees' right to an award of back pay. Manifestly, the remedial provisions of the Act should prevail over this claim, especially when the Company has enjoyed the fruits of its violation.

■ For all of these reasons, we see no merit in any of the Company's defenses and we think that the present record and the Company's admissions demonstrate that the Company has committed civil contempt by its failure and refusal to comply with our supplemental judgment, without the need for further evidentiary proceedings.

## ORDER

In accordance with the foregoing opinion, we hereby adjudge the Company, its officers, agents and representatives in civil contempt of this court for failing and refusing to comply with our supplemental judgment of January 2, 1975.

We further order, adjudge and decree that:

A. The Company, its officers, agents and representatives may purge themselves by:

1. Recognizing and bargaining with the union as the exclusive bargaining representative of its employees in accordance with the terms of the Company's memorandum agreements with the union that were executed on October 8, 1968, and by making whole each affected unit employee for any loss of pay he may have suffered by reason of the Company's refusal to honor the master collective bargaining agreements, and any modifications and extensions thereof, incorporated by reference by the aforesaid memoranda, and otherwise complying in full with each and every provision of the court's supplemental judgment of January 2, 1975, and not in any way by action or inaction committing, encouraging, permitting or condoning violation of said judgment.

2. Requiring furnishing any person dealing with the union on their behalf to read the supplemental judgment and this order and to signify in writing that said person has read and understands them.

3. Upon request of the union, immediately furnishing it with a list by name, address, job description, wage rate and date of hire of all the Company's employees since October 23, 1968 and maintaining said list in current status so long as the union remains the bargaining representative for the employees in the designated unit.

4. Immediately posting copies of the Board's Notice (annexed as an appendix to the court's January 2, 1975 supplemental judgment) in all places and in such manner as required by that judgment and simultaneously posting in conspicuous places, including all places where notices to employees are customarily posted, for a period of sixty (60) consecutive days, copies of the contempt adjudication and of an appropriate notice in the form to be furnished by the Board signed by the Company's president, which states that the Company has been adjudicated in civil contempt of court for disobeying the supplemental judgment of this court and that it will take the action in purgation ordered by the court. Said notices and copies of the contempt adjudication shall be maintained in clearly legible condition throughout such posting period, and the Company shall insure that they are not altered, defaced or covered by any other material.

5. Mailing to each of its current employees and to all former employees who were employed by it since October 23, 1968, a copy of the aforesaid notices, and providing to the Director of the Board's Twenty-Fifth Region a list of the names and addresses of all employees and former employees to whom said documents were mailed together with proof of such mailings.

6. Filing a sworn statement with the clerk of this court and a copy thereof with the Director of the Twenty-fifth Region, in writing, within fifteen (15) days from the date hereof, showing what

steps have been taken by the Company to comply with the Court's directions.

B. For the purpose of assuring compliance with the provisions of this order, there is hereby imposed upon the Company a compliance fine of $5,000 for each and every violation of the foregoing provisions, and a further compliance fine of $500 per day for each and every day that each violation continues, together with the reasonable costs and expenses of the United States in enforcing this order.

C. Notwithstanding the entry of this order, jurisdiction over the Company, its officers, agents and representatives is expressly retained for the entry of such additional order or orders as may be necessary to effect compliance, including but not limited to the assessment of specific fines and costs and the attachment of the Company's president and any other officers, agents or representatives responsible for noncompliance, and to amend this order or issue such additional orders as to this court seems appropriate.

> /s/ Carl McGowan
> United States Circuit Judge

> /s/ Harrison L. Winter
> United States Circuit Judge

> /s/ George E. MacKinnon
> United States Circuit Judge

MacKINNON, Circuit Judge (concurring in part and dissenting in part):

Reluctantly, I concur in this opinion, chiefly because the Company has been dilatory in actively asserting its rights. It definitely had some equitable claim to have the Board determine its duress defense. It properly asserted it at the outset but the Administrative Law Judge held for the Company on other grounds that were clearly recognized at the time as being valid. As expected, his position was sustained by the National Labor Relations Board only to be finally reversed by this court. The NLRB did not apply for certiorari, undoubtedly because they considered the case had some deficiencies for such review. Nevertheless, the NLRB does not agree with our reversal and reserves the right to raise the issue in other circuits. So when the foregoing opinion belabors the Company for signing "memorandum agreements not intending to observe them," it overstates the facts. The Company signed the agreements intending to observe them when the union achieved majority status. That was the interpretation placed on such agreements at that time and the Company was sustained in such position by both the ALJ and the Board. That interpretation might still be eventually upheld, in other cases, by the NLRB and the Supreme Court. In view of this partial justification for the Company's position and the extreme burden that full back pay might entail in such circumstances, I would remand the issue of back pay for consideration by the Board. To this extent, I respectfully dissent.