**TED HICKS AND ASSOCIATES, INC.,**
Petitioner, Cross-Respondent,

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**
Cross-Petitioner.

No. 77–3084
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

May 8, 1978.

---

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

Lahey, Atty., John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Assoc. Gen. Counsel, N.L. R.B., Washington, D. C., for respondent.

Before BROWN, Chief Judge, and COLEMAN and VANCE, Circuit Judges.

PER CURIAM:

Ted Hicks & Associates, Inc. (Hicks), a building contractor, petitions to set aside an order of the National Labor Relations Board (NLRB). The crux of the controversy concerns the interpretation of a prehire memorandum agreement between Hicks and Carpenters Local 1098 (Union). We agree with the NLRB's interpretation and enforce its order.

In 1969, the Union executed an areawide collective bargaining contract with the Baton Rouge Chapter of the Associated General Contractors of America, Inc. (AGC), a multiemployer bargaining group. In May 1974, a new two-year contract went into effect between the Union and the AGC. It was negotiated pursuant to a provision in the 1969 contract that provided:

> This agreement . . . shall remain in full force and effect through March 31, 1972, the anniversary date hereof and from year to year thereafter unless either party, at least ninety (90) days prior to any anniversary date, notify the other party of its desire to modify or terminate same.

Hicks, which was not a member of the AGC, signed a memorandum agreement with the Union on October 11, 1974, stating that both parties would be bound by all provisions of the 1969 collective bargaining contract between the Union and the AGC.[1] The memorandum, moreover, explained that Hicks would abide by "any modifications, extensions, or renewals" of that con-

G. Michael Pharis, Baton Rouge, La., for petitioner.

Elliott Moore, Deputy Assoc. Gen. Counsel, N.L.R.B., Peter M. Bernstein, Ruah D.

---

1. The full text of the October 11, 1974 memorandum agreement is as follows:

    This Agreement is made by and among the undersigned, hereinafter called "EMPLOYER", "UNION", or "TRUST(S)", as the case may be

1. EMPLOYER and UNION agree to comply with, abide by, and be bound by all of the provisions of the collective-bargaining agreement heretofore entered into between the UNITED BROTHERHOOD OF CAR-

tract. From October 11, 1974 to May 21, 1976, Hicks adhered to the terms of the 1974 agreement, which was then in effect, and contributed to the Union's welfare, education, and pension funds.

In 1976, the Union notified the AGC that it wanted to terminate the expiring 1974 contract and negotiate a new agreement. In May 1976, the Union and AGC executed another collective bargaining contract covering a subsequent two-year period. Hicks refused to comply with this agreement, and as a result, the NLRB held the company in violation of the National Labor Relations Act, § 8(a)(1), (a)(5), 29 U.S.C.A. § 158(a)(1), (a)(5).

Hicks argues that the memorandum agreement does not bind the company to all future agreements between the Union and the AGC. It contends, moreover, that the 1969 contract is irrelevant, and it is bound only by the 1974 agreement in effect at the time the memorandum was signed. The NLRB argues that the 1969 contract, which Hicks specifically agreed to follow, was the base contract, and the 1974 and 1976 agreements were only modifications. *See NLRB v. R. J. Smith Construction Co., Inc.*, 1976, 178 U.S.App.D.C. 109, 545 F.2d 187.

■ The Board's interpretation of a collective bargaining agreement will stand if it is supported by the record and has a reasonable basis in law. *Newspaper Production Co. v. NLRB*, 5 Cir., 1974, 503 F.2d 821, 830. We believe that the NLRB's interpretation in this case meets this standard. *Cf. NLRB v. Beckham, Inc.*, 5 Cir., 1977, 564 F.2d 190 (substantial evidence supported NLRB's finding that employer was bound by multiemployer bargaining agreement). Hicks offers no explanation, indeed it never attempts an explanation, why it would sign a memorandum agreement in October 1974, stating that it adhered to a 1969 contract, if the 1969 contract had no bearing on the 1974 agreement. Examination, furthermore, of the three Union-AGC contracts—1969, 1974, and 1976—reveals that they are nearly identical, except for changes in certain economic terms. It was reasonable, therefore, for the NLRB to conclude that the 1969 agreement was the base contract, and the 1974 and the 1976 agreements were modifications of that base. Thus, the Union's notice to the AGC in 1974 merely signaled an end to the terms in the 1974 contract and not an end to the Union's relation with Hicks.

■ In the alternative, Hicks contends that the 1974 contract is still in effect because it received no notice that the Union

PENTERS AND JOINERS OF AMERICA, LOCAL UNION 1098 and the BATON ROUGE CHAPTER, ASSOCIATED GENERAL CONTRACTORS OF AMERICA, INC., dated March 28, 1969, and any modifications, extensions, or renewals thereof with the same force and effect as though the said collective bargaining agreement was set forth here in full.

2. EMPLOYER agrees to become a party to and be bound by all the terms and provisions of the agreements establishing:
   a. CARPENTERS LOCAL NO. 1098 WELFARE FUND, being that Agreement and Declaration of Trust dated August 1, 1969,
   b. CARPENTERS LOCAL 1098 PENSION TRUST, being that Agreement and Declaration of Trust dated March 31, 1970,
   c. LOCAL 1098 EDUCATIONAL AND TRAINING PROGRAM TRUST, being that Agreement and Declaration of Trust dated April 30, 1970,

with the same force and effect as though the agreements were set forth here in full. Without in anywise limiting the generality of the foregoing, EMPLOYER does irrevocably designate and appoint the employers mentioned in the various Trust Agreements as its attorneys in fact for the selection, removal, and substitution of Trustees as provided in said agreement(s) and does hereby agree to make payments covering all of his employees as required by the collective bargaining agreement and the agreements establishing said trusts and does hereby ratify, approve and consent to all matters heretofore done in connection with the creation and administration of such trusts.

3. TRUST(S) agree(s) that EMPLOYER is granted the right to participate in said agreement(s), subject to all the terms and conditions thereof, with the same effect as though he were originally a party thereto.

wanted to renegotiate this contract. Although Hicks did not receive notice, the Union complied with the requirements of the 1974 contract in notifying the AGC. More importantly, the memorandum agreement does not stipulate that the Union must notify Hicks if it seeks to alter the 1969 contract. *Cf. NLRB v. R. J. Smith Construction Co., supra,* 545 F.2d at 192 (employer did not comply with termination provisions of prehire memorandum agreements). The memorandum in this case requires only that the Union and Hicks adhere to modifications of the 1969 agreement, which is what the Union did in notifying the AGC.[2]

ENFORCED.

---

2. Although the memorandum agreement contains no expiration date, the Board's decision explains how Hicks or the Union could end the agreement:

Inasmuch as the memorandum agreement did not contain an expiration date or express provisions regarding its termination, it is necessary to determine how an end to that agreement could be achieved by the parties. We find that the memorandum agreement by its terms incorporates the provisions of the 1969 agreement, and successor agreements modifying it, including the 1974 agreement which then was effective. Hence, we further find that Respondent was obligated to give notice to the Union at least 90 days prior to the desired date for termination of the memorandum agreement, in accordance with the provisions of the incorporated 1974 contract. By the same token, had the Union desired to terminate the memorandum agreement with Respondent and negotiate a separate 1976 contract, it would have been obligated to give at least 90 days' notice to Respondent of the proposed termination date. Note that in so finding we reject any construction of our holding that such notice of termination could be by termination of the AGC-Union bargaining agreements. 232 NLRB No. 113 at 7 n.5 (Sept. 30, 1977), R. at 83.

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.