**Forrest BUGHER et al.**

v.

**SOUTHLAND FABRICATORS AND ERECTORS, INC.**

**Civ. A. No. 760626.**

United States District Court,
W. D. Louisiana,
Shreveport Division.

June 22, 1978.

Jerry L. Gardner, Jr., Dodd, Barker, Boudreaux, Lamy & Gardner, New Orleans,

La., Louis E. Sigman, Chicago, Ill., for plaintiffs.

Henry A. Politz, Booth, Lockard, Jack, Pleasant & LeSage, Shreveport, La., for defendant.

## OPINION

DAWKINS, Senior District Judge.

Trustees of the Central Pension Fund of the International Union of Operating Engineers and Participating Employers, the International Union of Operating Engineers and Pipeline Employers Health and Welfare Fund, and the Operating Engineers Local 406, State of Louisiana Apprenticeship and Training Fund bring this action to collect from Southland Fabricators and Erectors, Inc. (Southland), contributions allegedly owed the Funds. We took this matter under advisement upon stipulated facts and affidavits, without trial (Rule 56 F.R.Civ.P.) and now render our decision on the merits.

### Findings of Fact

Plaintiffs are trustees of multi-employer pension, welfare, and apprenticeship trust funds established pursuant to collective bargaining agreements with the International Union of Operating Engineers (IUOE) and its local unions. The trustees receive contributions from contractually obligated employers and manage these funds in accordance with written trust agreements.

International Union of Operating Engineers, Local 406, is a local union affiliated with IUOE. Both Unions are labor organizations as defined in 29 U.S.C. § 152(5) responsible for bargaining with employers concerning wages, hours, and other conditions of employment of heavy equipment operators and mechanics in the construction industry.

Defendant, Southland, is a Louisiana corporation engaged in the construction industry as a subcontractor for the erection of structural and reinforcing steel. To this end, Southland has regularly employed operators for company-owned cranes and a fork lift.

James E. Davis is president and sole shareholder of stock in the defendant corporation, which maintains its principal place of business in Shreveport, Louisiana.

On February 22, 1973, Davis, as president of Southland, executed a short-form composite agreement with IUOE, Local 406, represented by John E. Bright, providing in part:

"The undersigned Contractor-Employer and Local 406 International Union of Operating Engineers, AFL–CIO hereby agree to be bound respectively by each of the collective bargaining agreements between the Union and the New Orleans, Baton Rouge, Acadian, Central Louisiana, Northeast Louisiana, Shreveport, and Lake Charles Chapters, all affiliated with Associated General Contractors of America, Inc. * * *.

"Both parties hereto acknowledge that they have personally in their possession copies of the said agreements and are fully cognizant of their provisions."

When the short-form agreement was executed, there were in effect various master agreements between IUOE Local 406 and various chapters of the Associated General Contractors (AGC) throughout Louisiana. In addition to wages, the master agreement between IUOE Local 406 and the Shreveport area AGC chapter provided for payments by employers to the Central Pension Fund of the International Union of Operating Engineers and Participating Employers (Central Pension Fund) in the amount of 15¢ per hour worked by each covered employee (30¢ per hour on double-time work). Contractors also were required to pay 25¢ per hour worked by covered employees into the Operating Engineers Local 406 Welfare Plan (Welfare Plan) (50¢ per hour on double-time work). The master agreement further provided:

"(A) The employers agree to be bound by the Agreement and Declaration of Trust entered into as of September 7, 1960, establishing the Central Pension fund of the International Union of Operating Engineers and by any amendments to said Trust Agreement. The employers

irrevocably designate as their representatives among the trustees of said fund such trustees as are named in said Agreement and Declaration of Trust as employer trustees, together with their successors selected in the manner provided in said Agreement and Declaration of Trust, as that document may be amended from time to time.

"(B) The employers agree to be bound by the Agreement and Declaration of Trust entered into as of May 11, 1956, establishing Operating Engineers Local # 406, Welfare Plan (State of Louisiana) and by any amendments to said Trust Agreement. The employers irrevocably designate as their representatives among the trustees of said Fund such trustees as are named in said Agreement and Declaration of Trust as employer trustees, together with their successors selected in the manner provided in said Agreement and Declaration of Trust, as that document may be amended from time to time.

"(C) Failure of a Contractor to promptly and properly pay and account to the said Welfare Fund or Pension Fund for the amounts due as provided in this Article, according to the trust instrument and/or any rules and regulations adopted by the Trustees of the said Welfare Fund or Pension Fund, shall be cause for the Union to take immediate economic action against the Contractor, including the cessation of all work for that Contractor until and unless the dispute involving such payment is satisfactorily resolved, provided there is at least 15 days written notice and no sooner than 30 days after due date."

In addition to adopting by reference the terms of the AGC–IUOE Local 406 Master Agreement, Davis and Bright executed participating agreements on February 22, 1973, whereby Southland agreed to make contributions to the IUOE Central Pension Fund and the Welfare Plan in accordance with the terms of trust agreements establishing and governing each Fund.

The short-form composite agreement between Southland and Local 406 provided that with respect to the AGC Master Agreement,

"both parties are bound by all extensions, modifications, and renewals of the Agreements listed above and remain so bound unless either party gives timely notice to the other in accordance with the terms of the agreement of a desire to terminate the agreement. The contractor will give notice in writing to the respective Chapter whether a member or not and to the Union. The Union will give notice to the Chapter and to the contractor."

The Shreveport master agreement was extended, modified, and renewed from May 1, 1974, to and including April 30, 1976, and from May 1, 1976, to and including April 30, 1978. Contributions to the Central Pension Fund were increased as follows:

Effective November 1, 1974, 30¢ per hour worked;

effective May 1, 1975, 39¢ per hour worked;

effective November 1, 1975, 48¢ per hour worked.

Additionally, a 5¢ contribution per hour worked, to the Local 406 Apprenticeship and Training Fund (Training Fund), was instituted effective May 1, 1974. Contributions to the Welfare Plan were increased on November 1, 1976 to 45¢ per hour worked, and on May 1, 1977, to 65¢ per hour worked.

The renewed master agreements were received by defendant through the mail from time to time.

Defendant never has given notice of a desire to terminate the short-form composite agreement as required by the terms of that agreement. Nor has defendant given notice of a desire to terminate the separate participating agreements binding it to the terms and conditions of the Trust Agreements.

Defendant was a member of the Shreveport Chapter of AGC prior to sometime in 1975 when its membership was terminated. After then, defendant no longer formally assigned its bargaining rights to the local AGC chapter. Local Union 406 was not given notice of this action.

After execution of the short-form composite agreement, defendant began to submit the required fringe benefit reports and contributions. Each standardized report form, signed by an official of the employing company, contained the following provision:

"The undersigned employer and Union hereby acknowledge that the contributions covered by this remittance report are made in conformity with the written collective bargaining agreements currently in effect between Operating Engineers Local 406 and the Associated General Contractors of America, Inc. (State of Louisiana)."

The employer further agreed to be bound to the terms and provisions of the respective trust agreements.

In April of 1976, the plaintiff-trustees, under authority of the trust agreements, arranged an independent audit of defendant's payroll books and records for the period commencing January 1, 1974. At that time, defendant was delinquent in submission of fringe benefit contributions for the period September, 1975, to and including March, 1976.

An audit commenced at defendant's Shreveport office on September 20, 1976. Upon completion, the auditor prepared principal and subsidiary reports. The principal report consisted of individuals whom the auditor identified as operating engineers or mechanics. The subsidiary report consisted of employees whose job classifications could not be determined from Company records, but who appeared not to be operating engineers.

The auditor's findings in the principal report were that amounts remaining unpaid to the trustees were as follows:

| | |
|---|---|
| Central Pension Fund | $ 4,020.88 |
| Welfare Plan | 3,577.61 |
| Training Fund | 550.22 |

For various reasons, the sums now claimed by plaintiffs are substantially less. Our computation of the amounts due, if the defendant was contractually obligated, is as follows:

| | |
|---|---|
| Central Pension Fund | $ 1,276.68 |
| Welfare Plan | 1,389.69 |
| Training Fund | 219.96 |

(See Appendix A, attached hereto for a more detailed explanation.)

These sums reflect contributions owed on behalf of Clarence Gray, Albert Prince, Jr., Clyde Shearin, Ronald Townley, Jimmy Cooper, J. P. Lenzly, Wade LaBorde, Harry DeSoto, Charles Dubois, and Gary Davis.

The cost of the principal and subsidiary audit reports was $5,068.43. Attorneys for plaintiffs expended 82½ hours in prosecution of this action to collect delinquent contributions.

*Conclusions of Law*

We have jurisdiction over the parties and subject matter of this action and venue is proper. 29 U.S.C. § 1132(e)(1) and (2).

Southland contends it was not contractually obligated to make contributions to the trust funds after April 30, 1974, because a new AGC master agreement went into effect to which Southland was not a party. The terms of defendant's contracts with Local 406 are unambiguous. The short-form agreement provided that a signatory employer, whether a member of the association or not, would be bound by the extended, modified, and renewed collective bargaining agreements subsequently negotiated with the various chapters of AGC. The agreement further provided that an employer's intention to terminate the short-form or master agreements would be effective only upon timely written notice to the Union and local chapter.

Moreover, long past April of 1974, Southland employed Local 406 workers under the terms of the new master agreements, making periodic contributions to the trust funds. Such actions dispel any question of consent to the new agreements.

We find that defendant was contractually obligated to make contributions for its Local 406 employees in accordance with the terms of the prevailing AGC master agreement. Giving proper credit for payments made by defendant and Tudor Construction Company, we find that the defendant underpaid through August of 1976, and there-

fore, owes to the Trust Funds the following sums:

| | |
|---|---|
| Central Pension Fund | $ 1,276.68 |
| Welfare Plan | 1,389.69 |
| Training Fund | 219.96 |

In addition to recovery of delinquent contributions, plaintiffs seek an award of an interest surcharge on the delinquent sums, plus attorney and audit fees incurred in bringing this action. The trust agreements provide for an interest surcharge and costs of recovering delinquent contributions. Further, under authority of 29 U.S.C. § 1132(g), we may allow reasonable attorney's fees and costs to either party.

An interest surcharge of 7% on the delinquent contributions is appropriate. See La. C.C. art. 2924. Thus, defendant must pay the following amounts to each Trust as a surcharge:

| | |
|---|---|
| Central Pension Fund | $ 89.37 |
| Welfare Plan | 97.28 |
| Training Fund | 15.40 |

In accordance with the contractual agreements and the policies of the Employee Retirement Income Security Program, 29 U.S.C. § 1001, et seq., the costs of the audit in the amount of $5,068.43, and attorney's fees in the amount of $6,187.50, must be paid by defendant.

No audit has been conducted for the period from September 1, 1976, to the present. Defendant will be ordered to submit appropriate records to accountants for the trustees. The parties then may move for further relief, if necessary, based upon the findings of the auditor.

A P P E N D I X "A"

SUPPLEMENTAL STIPULATION OF FACTS

(Filed June 2, 1978)

Pursuant to this Court's Order of May 10, 1978, the following supplemental stipulation of facts is offered herein, showing:

(1) a tabulation by months reflecting amounts owed each fringe benefit fund for hours worked for certain employees, specified in said Order of this Court, from January, 1974 to September, 1976, if the defendant is found to be contractually obligated; and

(2) beginning in February, 1975, a tabulation by months, of payments received by the Trustees from defendant and Tudor Construction Company.

January, 1974:

| | Hours | | | | |
|---|---|---|---|---|---|
| | S/T | O/T | Pension | Welfare | Apprenticeship |
| Tommy Jenkins | .50 | 27 | 8.18 | 13.62 | — |
| Mike Lukasheay | .50 | — | .08 | .12 | — |
| Gary Davis | 193.50 | 6.25 | 30.90 | 51.50 | — |
| | 194.50 | 33.25 | 39.16 | 65.24 | |

February, 1974:

| | S/T | O/T | Pension | Welfare | Apprenticeship |
|---|---|---|---|---|---|
| Tommy Jenkins | — | 27 | 8.10 | 13.50 | — |
| Clarence Gray | 10 | — | 1.50 | 2.50 | — |
| | 10 . | 27 | 9.60 | 16.00 | |

March, 1974:

| | S/T | O/T | Pension | Welfare | Apprenticeship |
|---|---|---|---|---|---|
| Tommy Jenkins | 120 | 30.50 | 27.15 | 45.25 | — |
| Mike Lukasheay | 154 | 8.50 | 25.65 | 42.75 | — |
| James T. Swaney | 146 | 17 | 27.00 | 45.00 | — |
| Doyle Withers | 160 | 33.50 | 34.05 | 56.75 | — |
| | 580 | 89.50 | 113.85 | 189.75 | |

| | Hours | | | | |
| | S/T | O/T | Pension | Welfare | Apprenticeship |
|---|---|---|---|---|---|
| **April, 1974:** | | | | | |
| Tommy Jenkins | – | .25 | .08 | .12 | |
| | | | | | |
| **May, 1974:** | | | | | |
| Doyle Withers | .50 | – | .08 | .12 | .03 |
| Jimmy Cooper | 16 | – | 2.40 | 4.00 | .80 |
| Charles Dubois | 40 | – | 6.00 | 10.00 | 2.00 |
| Clyde Shearin | 8.50 | – | 1.28 | 2.13 | .43 |
| | 65 | 0 | 9.76 | 16.25 | 3.26 |
| | | | | | |
| **June, 1974:** | | | | | |
| Charles Dubois | 8 | – | 1.20 | 2.00 | .40 |
| J. P. Lenzly | 199.75 | – | 29.96 | 49.94 | 9.99 |
| | 207.75 | 0 | 31.16 | 51.94 | 10.39 |
| | | | | | |
| **July, 1974:** | | | | | |
| Tommy Jenkins | 43.75 | – | 6.56 | 10.94 | 2.18 |
| James T. Swaney | 43.75 | – | 6.56 | 10.94 | 2.18 |
| Wade LaBorde | 155 | – | 23.25 | 38.75 | 7.75 |
| J. P. Lenzly | 238 | – | 35.70 | 59.50 | 11.90 |
| | 480.50 | – | 72.07 | 120.13 | 24.01 |
| | | | | | |
| **August, 1974:** | | | | | |
| J. P. Lenzly | 192 | – | 28.80 | 48.00 | 9.60 |
| **September, 1974:** | | | | | |
| J. P. Lenzly | 159.50 | – | 23.93 | 39.88 | 7.98 |
| | | | | | |
| **October, 1974:** | | | | | |
| J. P. Lenzly | 220.75 | – | 33.11 | 55.19 | 11.04 |
| | | | | | |
| **November, 1974:** | | | | | |
| James Stewart | 7 | – | 2.10 | 1.75 | .35 |
| J. P. Lenzly | 166.50 | – | 49.95 | 41.63 | 8.33 |
| | 173.50 | 0 | 52.05 | 43.38 | 8.68 |
| | | | | | |
| **December, 1974:** | | | | | |
| Freemont Laney | 36 | – | 10.80 | 9.00 | 1.80 |
| John Sonnier | 82 | – | 24.60 | 20.50 | 4.10 |
| Ronald Townley | 78.50 | – | 23.55 | 19.63 | 3.93 |
| | 196.50 | – | 58.95 | 49.13 | 9.83 |
| | | | | | |
| **January, 1975:** | | | | | |
| Ronald Townley | 18 | – | 5.40 | 4.50 | .90 |
| Larry Swaney | 66.50 | – | 19.95 | 16.63 | 3.32 |
| | 84.50 | – | 25.35 | 21.13 | 4.22 |

876

| | Hours | | | | |
|---|---|---|---|---|---|
| | S/T | O/T | Pension | Welfare | Apprenticeship |
| **February, 1975:** | | | | | |
| Larry Whatley (T) * | 48 | — | 14.40 | 12.00 | 2.40 |
| Larry Swaney | 81.50 | — | 24.45 | 20.38 | 4.07 |
| | 129.50 | 0 | 38.85 | 32.38 | 6.47 |
| Tudor Payment * See Footnote [1] for February, 1975 (40 hrs.) | | | 19.20 | 10.00 | 2.00 |
| Net | | | 19.65 | 22.38 | 4.47 |

* Tudor Employee

1.

It should be noted that, as set forth in the pretrial stipulation herein, plaintiffs received payments from Tudor Construction Co. in the total amount of $3,188.83 allocated as follows:

Pension Fund .......................... $1,962.36
Health & Welfare ...................... 1,022.06
Apprenticeship Fund ................... 204.41

This sum was derived from multiplying the total number of hours worked by the five "Tudor employees" (4,088.25) reflected on Tudor's worksheet, times the applicable rate for each fund. An examination of Tudor's cover worksheet reflects total hours worked by Morris LaCombe, from 3/11/75 to 9/30/75, as 664 hours. This figure was used to arrive at the total figure of hours, 4,088.25. However, an examination of the Tudor notes attached to the worksheet, for Morris LaCombe, reveals that the actual total number of hours worked by LaCombe was 564, not 664. Therefore the correct number of hours worked by the "Tudor employees" was 3,988.25, and not 4,088.25. Hence Tudor overpaid each fund as follows:

Pension Fund ......................... 100 hrs. × .48 = $48.00
Health & Welfare ..................... 100 hrs. × .25 = 25.00
Apprenticeship Fund .................. 100 hrs. × .05 = 5.00
$78.00

The figures reflected in the monthly tabulations from February, 1975—February, 1976 hereinabove, showing payments received by the Trustees from Tudor reflect correct amounts based on the correct number of hours worked by the "Tudor employees", 3,988.25. The totals are:

Correct Contributions from Tudor:

Pension Fund ......................... $1,914.36
Health & Welfare ..................... 997.06
Apprenticeship Fund .................. 199.41
$3,110.83

When these figures are added to the overpayment for the 100 hours, the following sums result:

Pension Fund ......................... $1,914.36 + $48.00 = $1,962.36
Health & Welfare ..................... $997.06 + $25.00 = 1,022.06
Apprenticeship Fund .................. $199.41 + $5.00 = 204.41
$3,188.83

As stated above, the sum remitted ty Tudor was $3,188.83. Therefore, in addition to the corrected Tudor contributions, the defendant is also entitled to credit for the overpayment for the 100 hours described above.

| | | Hours | | | |
|---|---|---|---|---|---|
| | S/T | O/T | Pension | Welfare | Apprenticeship |
| **March, 1975:** | | | | | |
| Mike Lukasheay | 83.50 | — | 25.05 | 20.88 | 4.17 |
| James Swaney | 36 | — | 10.80 | 9.00 | 1.80 |
| Boyle Withers | 126.75 | — | 38.03 | 31.68 | 6.34 |
| Larry Whatley (T) | 135 | — | 40.50 | 33.75 | 6.75 |
| Morris LaCombe (T) | 84 | — | 25.20 | 21.00 | 4.20 |
| Larry Swaney | 129.25 | — | 38.78 | 32.31 | 6.46 |
| | 594.50 | — | 178.36 | 148.62 | 29.72 |
| Tudor Payment for March, 1975 (219 hrs.) | | | 105.12 | 54.75 | 10.95 |
| Net | | | 73.24 | 93.87 | 18.77 |
| | | | | | |
| **April, 1975:** | | | | | |
| Wilbur Newsome (T) | 16 | — | 4.80 | 4.00 | .80 |
| Larry Swaney | 56 | — | 16.80 | 14.00 | 2.80 |
| Morris LaCombe (T) | 96 | — | 28.88 | 24.00 | 4.80 |
| Larry Whatley (T) | 165 | — | 49.50 | 41.25 | 8.25 |
| | 333 | — | 99.98 | 83.25 | 16.65 |
| Tudor Payment for April, 1975 (277 hrs.) | | | 132.96 | 69.25 | 13.85 |
| Net | | | 32.98 Cr. | 14.00 | 2.80 |
| | | | | | |
| **May, 1975:** | | | | | |
| Harry Desota | 34 | — | 13.26 | 8.50 | 1.70 |
| Wilbur Newsome (T) | 34 | — | 13.26 | 8.50 | 1.70 |
| | 68 | 0 | 26.52 | 17.00 | 3.40 |
| Tudor Payment for May, 1975 (34 hrs.) | | | 16.32 | 8.50 | 1.70 |
| Net | | | 10.20 | 8.50 | 1.70 |
| | | | | | |
| **June, 1975:** | | | | | |
| Morris LaCombe (T) | 16 | — | 6.24 | 4.00 | .80 |
| Larry Whatley (T) | 17 | — | 6.63 | 4.25 | .85 |
| | 33 | 0 | 12.87 | 8.25 | 1.65 |
| Tudor Payment for June, 1975 (33 hrs.) | | | 15.84 | 8.25 | 1.65 |
| Net | | | 2.97 Cr. | 0 | 0 |
| | | | | | |
| **July, 1975:** | | | | | |
| Mike Lukasheay | 40 | — | 15.60 | 10.00 | 2.00 |
| Donald Combs (T) | 50 | — | 19.50 | 12.50 | 2.50 |
| L. H. Malone (T) | 134 | — | 52.26 | 33.50 | 6.70 |
| Wilbur Newsome (T) | 148 | — | 57.72 | 37.00 | 7.40 |
| Morris LaCombe (T) | 63 | — | 24.57 | 15.75 | 3.15 |
| Larry Whatley (T) | 89 | — | 34.71 | 22.25 | 4.45 |
| | 524 | 0 | 204.36 | 131.00 | 26.20 |
| Tudor Payment for July, 1975 (484 hrs.) | | | 232.32 | 121.00 | 24.20 |
| Net | | | 27.90 Cr. | 10.00 | 2.00 |

| | Hours | | | | |
|---|---|---|---|---|---|
| | S/T | O/T | Pension | Welfare | Apprenticeship |
| August, 1975: | | | | | |
| Donald Combs (T) | 88.50 | — | 34.52 | 22.13 | 4.43 |
| L. H. Malone (T) | 156 | — | 60.84 | 39.00 | 7.80 |
| Wilbur Newsome | 157 | — | 61.23 | 39.25 | 7.85 |
| Morris LaCombe | 148 | — | 57.72 | 37.00 | 7.40 |
| Larry Whatley | 100 | — | 39.00 | 25.00 | 5.00 |
| | 649.50 | 0 | 253.31 | 187.13 | 32.48 |
| Tudor Payment for August, 1975 (649.50 hrs.) | | | 311.76 | 162.37 | 32.47 |
| Net | | | 58.45 Cr. | 24.75 | 0.00 |
| September, 1975: | | | | | |
| Mike Lukasheay | 142 | — | 55.38 | 35.50 | 7.10 |
| Larry Whatley (T) | 165 | — | 64.35 | 41.25 | 8.25 |
| Morris LaCombe (T) | 157 | — | 61.23 | 39.25 | 7.85 |
| L. H. Malone (T) | 180 | — | 70.20 | 45.00 | 9.00 |
| Wilbur Newsome (T) | 139 | — | 54.21 | 34.75 | 6.95 |
| Donald Combs (T) | 174 | — | 67.86 | 43.50 | 8.70 |
| James Swaney | 136.50 | — | 53.24 | 34.12 | 6.85 |
| | 1,093.50 | 0 | 426.47 | 273.37 | 54.73 |
| 9/16/76 payment by defendant for September, 1975 (278.50 hrs.) | | | 133.68 | 69.63 | 13.93 |
| Payment by Tudor for September, 1975 (815 hrs.) | | | 391.20 | 203.75 | 40.75 |
| Net | | | 98.41 Cr. | .01 Cr. | 0.00 |
| October, 1975: | | | | | |
| Gary Davis | 134 | — | 64.32 | 33.50 | 6.70 |
| L. H. Malone (T) | 112 | — | 43.68 | 28.00 | 5.60 |
| Wilbur Newsome (T) | 128 | — | 49.92 | 32.00 | 6.40 |
| Donald Combs (T) | 153 | — | 59.67 | 38.25 | 7.65 |
| Steve Smith | 139 | — | 54.21 | 34.75 | 6.95 |
| Mike Lukasheay | 160 | — | 62.40 | 40.00 | 8.00 |
| James Swaney | 117.50 | — | 45.83 | 29.37 | 5.88 |
| Larry Whatley | 18.50 | — | 7.22 | 4.63 | .93 |
| | 962 | — | 386.55 | 240.50 | 48.11 |
| 9/16/76 payment by defendant for October, 1975 (278 hrs.) | | | 133.44 | 69.50 | 13.90 |
| Payment by Tudor for October, 1975 (411.50 hrs.) | | | 197.52 | 102.88 | 20.58 |
| Net (difference) | | | 55.59 | 68.12 | 13.63 |
| November, 1975: | | | | | |
| Gary Davis | 48 | — | 23.04 | 12.00 | 2.40 |
| L. H. Malone (T) | 158 | — | 75.84 | 39.50 | 7.90 |
| Wilbur Newsome (T) | 160 | — | 76.80 | 40.00 | 8.00 |
| Donald Combs (T) | 144 | — | 69.12 | 36.00 | 7.20 |
| James Harris | 12.75 | — | 6.12 | 3.19 | .64 |
| Steve Smith | 100 | — | 48.00 | 25.00 | 5.00 |

| | Hours | | | | |
|---|---|---|---|---|---|
| | S/T | O/T | Pension | Welfare | Apprenticeship |
| **November, 1975:** | | | | | |
| Mike Lukasheay | 122 | — | 58.56 | 30.50 | 6.10 |
| James Swaney | 1.50 | — | .72 | .38 | .07 |
| Tommy Jenkins | 152 | — | 72.96 | 38.00 | 7.60 |
| | 898.25 | 0 | 431.16 | 224.57 | 44.91 |
| 9/16/76 Payment by defendant for November, 1975 (275.50 hrs.) | | | 132.24 | 68.88 | 13.78 |
| Payment by Tudor for November, 1975 (462 hrs.) | | | 221.76 | 115.50 | 23.10 |
| Net (difference) | | | 77.16 | 40.19 | 8.03 |
| **December, 1975:** | | | | | |
| Gary Davis | 68 | — | 32.64 | 17.00 | 3.40 |
| Mike Lukasheay | 147 | — | 70.56 | 36.75 | 7.35 |
| L. H. Malone (T) | 80 | — | 38.40 | 20.00 | 4.00 |
| Wilbur Newsome (T) | 125.25 | — | 60.12 | 31.31 | 6.26 |
| Donald Combs (T) | 112 | — | 53.76 | 28.00 | 5.60 |
| Tommy Jenkins | 79 | — | 37.92 | 19.75 | 3.95 |
| | 611.25 | 0 | 293.40 | 152.81 | 30.56 |
| 9/16/76 Payment by defendant for December, 1975 (180 hrs.) | | | 86.40 | 45.00 | 9.00 |
| Payment by Tudor for December, 1975 (317.25 hrs.) | | | 152.28 | 79.31 | 15.86 |
| Net (difference) | | | 54.72 | 28.50 | 5.70 |
| **January, 1976:** | | | | | |
| Gary Davis | 132 | — | 63.36 | 33.00 | 6.60 |
| Donald Combs (T) | 122 | — | 58.56 | 30.50 | 6.10 |
| L. H. Malone (T) | 64 | — | 30.72 | 16.00 | 3.20 |
| Mike Lukasheay | 118 | — | 56.64 | 29.50 | 5.90 |
| | 436 | 0 | 209.28 | 109.00 | 21.80 |
| 1/16/76 Payment by defendant for January, 1976 (118 hrs.) | | | 56.64 | 29.50 | 5.90 |
| Payment by Tudor for January, 1976 (186 hrs.) | | | 89.28 | 46.50 | 9.30 |
| Net (difference) | | | 63.36 | 33.00 | 6.60 |
| **February, 1976:** | | | | | |
| Gary Davis | 160 | — | 76.80 | 40.00 | 8.00 |
| Donald Combs (T) | 60 | — | 28.80 | 15.00 | 3.00 |
| **June, 1976:** | | | | | |
| James Swaney | 78 | — | 37.44 | 19.50 | 3.90 |
| Larry Swaney | 81.50 | — | 39.12 | 20.37 | 4.08 |
| Tommy Jenkins | 96 | — | 46.08 | 24.00 | 4.80 |
| | 255.50 | 0 | 122.64 | 63.87 | 12.78 |
| 9/16/76 Payment by defendant for June, 1976 (96 hrs.) | | | 46.08 | 24.00 | 4.80 |
| Net (difference) | | | 76.56 | 39.87 | 7.98 |

| | Hours | | | | |
| | S/T | O/T | Pension | Welfare | Apprenticeship |
| July, 1976: | | | | | |
| Tommy Jenkins | 127 | — | 60.96 | 31.75 | 6.35 |
| James Swaney | 158 | — | 75.84 | 39.50 | 7.90 |
| Mike Lukasheay | 16 | — | 7.68 | 4.00 | .80 |
| | 301 | 0 | 144.48 | 75.25 | 15.05 |
| August, 1976: | | | | | |
| Mike Lukasheay | 73 | — | 35.04 | 18.25 | 3.65 |
| James Swaney | 34 | — | 16.32 | 8.50 | 1.70 |
| Tommy Jenkins | 120 | — | 57.60 | 30.00 | 6.00 |
| Larry Swaney | 150 | — | 72.00 | 37.50 | 7.50 |
| | 377 | 0 | 180.96 | 94.25 | 18.85 |
| TOTALS: | | | 1,276.68 | 1,389.69 | 219.96 |