[Civ. No. 49339. First Dist., Div. Three. June 10, 1982.]

JOHN A. REBEIRO, as Chairman, etc., et al., Plaintiffs and Appellants, v.
NOR-CAL INTEGRATED CEILINGS, Defendant and Respondent.

NOR-CAL INTEGRATED CEILINGS, Plaintiff and Respondent, v.
CARPENTERS UNION, LOCAL 1570 et al., Defendants and Appellants.

524

## Counsel

Van Bourg, Allen, Weinberg & Roger and David A. Rosenfeld for Plaintiffs and Appellants and for Defendants and Appellants.

Voltz, Cook & Orenstein, Morton H. Orenstein and Steven R. Feldstein for Defendant and Respondent and Plaintiff and Respondent.

## Opinion

**FEINBERG, Acting P. J.**—This appeal is from a summary judgment in favor of the employer, Nor-Cal Integrated Ceilings, in two proceedings coordinated pursuant to Code of Civil Procedure section 404.3 and rule 1540, California Rules of Court.[1]

■ "'Summary judgment is proper only if the affidavits in support of the moving party would be sufficient to sustain a judgment in his favor and his opponent does not by affidavit show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue. ■ The aim of the procedure is to discover, through the media of affidavits, whether the parties possess evidence requiring the weighing procedures of a trial. ■ [¶] In examining the sufficiency of affidavits filed in connection with the motion, the affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion. ■ Such summary procedure is drastic and should be used with caution so that it does not become a substitute for the open trial method of determining facts.'" (*Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.* (1971)

---

[1]The action brought by John A. Rebeiro et al. (Rebeiro or appellants) was on behalf of the trustees of various Carpenters Trust Funds. Rebeiro sought to collect from employer (Nor-Cal or respondent) fringe benefit contributions that were allegedly due pursuant to a collective bargaining memorandum agreement executed May 1, 1970, between Nor-Cal and the United Brotherhood of Carpenters and Joiners of America for and on behalf of its affiliated local unions and district councils in the 41 Northern California Counties.

The action brought by Nor-Cal was against various carpenter union entities (Carpenters or Carpenters Unions). Nor-Cal sought declaratory relief and a judicial determination that Nor-Cal's contractual obligations ceased as of June 16, 1971, the asserted expiration date of the master agreement in existence at the time of the execution of the May 1 memorandum agreement.

4 Cal.3d 842, 851-852 [94 Cal.Rptr. 785, 484 P.2d 953], quoting from *Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785].) (Code Civ. Proc., § 437c.)

 "'"The remedy is designed to terminate an action promptly where the purported cause of action or defense is sham or otherwise wholly unfounded. But it is futile to seek the order where any basis for a cause of action or defense can be shown. In other words, the moving party should not confuse an opponent's *weak* case with *no case at all.* The [appellate] court, construing the moving party's affidavits strictly . . . and the counteraffidavits liberally . . ., will reverse the summary judgment if any kind of case is shown," (4 Witkin, Cal. Procedure (2d ed. 1971) Proceedings Without Trial, § 199, p. 2844.)' (*Bowden* v. *Robinson* (1977) 67 Cal.App.3d 705, p. 719 . . . .)" (*Fosgate* v. *Gonzales* (1980) 107 Cal.App.3d 951, 954-955 [166 Cal.Rptr. 233].)

Viewing the record in the light of the above rules, the following pertinent facts appear:

On May 1, 1970, Nor-Cal executed a Carpenters memorandum agreement, which in relevant part provided: "It is hereby understood and agreed by and between the undersigned and THE UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, which is affiliated with the AFL-CIO, for and on behalf of its affiliated Local Unions and District Councils in the 41 Northern California Counties, that for and in consideration of services performed and to be performed by carpenters for the undersigned employer . . . *the undersigned agrees to comply with the wages, hours and working conditions set forth in that certain agreement referred to for convenience as the 41 Northern California Counties Carpenters Master Agreement,* as renewed, supplemented, modified and changed on June 16, 1968 . . . *and any modifications, changes, extensions, or renewals of or to said Master Agreement made during the term of that agreement, or made in any subsequent negotiations after the expiration of the term of said agreement.*" (Italics added.)

This agreement further provided that Nor-Cal would pay to the trust funds (established for health and welfare, pension, vacation and training benefits, programs and plans) "the sum per hour for each hour paid for or worked" by carpenters which it employed, "as now specified and as may be hereafter specified by said Master Agreement . . . ."

By its terms the master agreement was effective from June 16, 1968, to June 16, 1971, and would "continue in full force and effect from year to year thereafter (unless cancelled or modified as herein provided). *Either party to the Agreement* may give written notice to the other of a desire to change or modify the terms hereof at least sixty (60) days prior to June 16, 1971, or June 16 of any succeeding year." (Italics added.)

"Successor agreements" were negotiated between certain employer groups in 46 Northern California Counties and the unions involved. These likewise were designated as master agreements and, respectively, covered periods from 1971-1974; 1974-1977 and 1977-1980. They were known as the "Carpenters Agreement 46 Northern California Counties."[2]

In its action filed against Nor-Cal on October 19, 1976, Rebeiro sought to recover $27,616.09 allegedly due for the months of January 1974 through October 1975 under the May 1, 1970, memorandum agreement.

In its action filed against Carpenters Local 1570 and other carpenters union entities on March 28, 1977, Nor-Cal sought: (1) a determination that an executed oral contract had modified the original agreement so as to exclude from coverage all of its employees not classified as journeymen acoustical applicators; and (2) a declaratory judgment finding that the memorandum agreement and the master agreement and trust fund obligations had been terminated.

The motion for summary judgment was based primarily on the ground that the contractual relationship between Nor-Cal and the Carpenter parties and trust funds had expired on June 16, 1971.

The trial court found that the memorandum agreement in the case at bench did not incorporate the terms of the master agreement of the 41

---

[2]The parties to the 1968-1971 master agreement were the (1) Carpenters, (2) the Northern California Central Chapter, the Associated General Contractors of America, Inc., (3) Engineering and Grading Contractors Association, Inc. (EGCA), and (4) General Contractors Council, Inc. (GCC).

The 1971-1974 master agreement (including 46 Northern California Counties) was between different parties. These were (1) the Carpenters, (2) Associated General Contractors of California, Inc. (AGC), (3) EGCA, and (4) California Home Builders Conference.

The 1974-1977 and the 1977-1980 master agreements were between (1) the Carpenters, (2) EGCA, (3) GCC and California Home Builders Conference.

Northern California Counties Carpenters, except for the "wages, hours and working conditions" provisions. The court also found that the memorandum agreement did *not* provide any termination rights for Nor-Cal, which would result in Nor-Cal being "irrevocably bound to every Master Carpenters Agreement in perpetuity without the right of termination which would be assured to any of the contracting parties to the Master Agreement."

The trial court then concluded, as a matter of law:

"(1) That the provisions of the Memorandum Agreement insofar as [they] would bind Nor-Cal to any renewal Carpenters' Agreement are invalid and void,

"(2) That the Memorandum Agreement entered into by Nor-Cal could be valid only for the period of the Master Carpenters' Agreement in effect at the time but not as to any subsequent Agreement which would be an extension, modification or renewal."

Following these conclusions, the trial court determined that there were no factual issues raised relative to the interpretation of the legal effect of the memorandum agreement.

The trial court also considered the issue of the claimed "renewal" of the 1968 master agreement by the subsequent 1971, 1974 and 1977 contracts, noting that because of the changes in the employer groups, the 1971 agreement was not a "renewal" of the 1968 agreement but a "new" agreement.

On the basis of this conclusion, the trial court further concluded that the May 1, 1970, memorandum agreement was not intended to bind Nor-Cal to the 1971 agreement and the subsequent agreements of 1974 and 1977.

Nor-Cal contends that the trial court correctly followed applicable federal law, and cites *Seymour v. Coughlin Co.* (9th Cir. 1979) 609 F.2d 346, cert. den. 1980, 446 U.S. 957 [64 L.Ed.2d 816, 100 S.Ct. 2929], and also relies on *Ted Hicks and Associates, Inc. v. N.L.R.B.* (5th Cir. 1978) 572 F.2d 1024.

Nor-Cal maintains that:

(a) The 1970 memorandum agreement did not specify any term for its duration. The 1968-1971 master agreement, then in effect, provided on its face that its term was from June 16, 1968, to June 16, 1971.

(b) The limited provisions of the 1970 memorandum agreement did not provide for Nor-Cal to become a party to the master agreement and thereby be entitled to its termination opportunities.

(c) Its decision to provide contributions to the trust funds did not demonstrate that it was bound by or believed that it was bound by the terms of the new master agreements.

(7) We disagree and reverse as the affidavits and counteraffidavits raise a number of disputed issues of material fact.

Memorandum or short-form agreements of the type here in issue are commonly used in the construction industry, and courts have repeatedly recognized the validity of these agreements. (*Const. Teamsters, etc.* v. *Con Form Const. Corp.* (9th Cir. 1981) 657 F.2d 1101; *Seymour* v. *Coughlin Co.* (9th Cir. 1979) 609 F.2d 346; *Ted Hicks and Associates, Inc.* v. *N.L.R.B., supra,* 572 F.2d 1024, 1025; *N.L.R.B.* v. *R. J. Smith Const. Co., Inc.* (D.C. Cir. 1976) 545 F.2d 187; *Bugher* v. *Southland Fabricators & Erectors, Inc.* (W.D.La. 1978) 452 F.Supp. 870; accord, *Scenic Land Properties* v. *Local 162* (1979) 103 L.R.R.M. 2127 affd. without opn. (9th Cir. 1981) 661 F.2d 942.) The above authorities clearly indicate that a signatory to a memorandum agreement can agree to be bound by future modifications, extensions and renewals of the master agreement.

Analysis of the agreements involved provides the best evidence of the intent of the parties. (*Const. Teamsters, etc.* v. *Con Form Const. Corp., supra,* at p. 1103.) Here, there are several contradictions as to intent that should be resolved by a trier of fact rather than by a summary judgment.

Nor-Cal's narrow and formalistic reading of the memorandum agreement ignores the "entire contract" and the circumstances under which it was made. It is not disputed that the "entire contract" of the parties was comprised of the memorandum agreement and the master agreement.

We note that Nor-Cal relies on a termination date of June 16, 1971, which appears only in section XVIII of the master agreement; accordingly, we cannot determine as a matter of law that the parties did not intend to include in the memorandum agreement the termination provisions of the master agreement. Nor-Cal's contentions about the illegality of an agreement without an express termination date makes no sense when applied to collective bargaining agreements in an industry with a well-established pattern and custom of master agreements. In rejecting a substantially identical contention, the court in *Ted Hicks and Associates, Inc.* v. *N.L.R.B., supra*, 572 F.2d 1024, 1027, footnote 2, pointed out that the memorandum agreement by its terms necessarily incorporated the termination provisions of the master agreement. Given the ongoing nature of the collective bargaining relationship, the better result is to view the agreements as voidable by either party on notice as provided in the master agreement. (Cf. *Todd* v. *Jim McNeff, Inc.* (9th Cir. 1982) 667 F.2d 800, 803.)

Here, as in *Scenic Land, supra*, 103 L.R.R.M. 2127, 2128, the memorandum agreement provided that the parties agreed to comply with "any modifications, changes, extensions, or renewals" of the master agreement. Under Nor-Cal's interpretation, this language becomes meaningless. As stated in *Scenic Land, supra*, a narrow literal reading of the terms "wages, hours and working conditions," is inappropriate where the memorandum agreement *also obligates* the employer to make contributions to the trust funds in the amounts specified by the master agreement.

Significantly, the union's counteraffidavits state that Nor-Cal continually filed trust fund contribution reports from October 1970 through November 1976, except during the period when no carpenters were employed. As late as December 1976, Nor-Cal requested the forms needed for these reports. Nor-Cal's conduct evidences an intent to be bound by the subsequent master agreements. (Cf. *Const. Teamsters, etc.* v. *Con Form Const. Corp., supra*, 657 F.2d 1101, 1104.)

Nor-Cal's argument that it is free from all obligations imposed except with respect to wages, hours, and working conditions, is inconsistent with its reports to the trust fund. Similar conduct has been held to create an estoppel. (*Bugher* v. *Southland Fabricators & Erectors, Inc., supra*, 452 F.Supp. 870, 873; *Carr* v. *Settle Construction Co., Inc.* (1974) 11 Wn.App. 336 [522 P.2d 849, 852].) Arguably, with each trust fund report filed, Nor-Cal certified that it was bound to the terms

of the master agreement. (Cf. *Scenic Land Properties* v. *Local 162, supra*, 103 L.R.R.M. 2127, 2129-2130.)

Whether a party's conduct in a given case constitutes estoppel is a question of fact. (*Arco Elec. Co.* v. *N.L.R.B.* (10th Cir. 1980) 618 F.2d 698, 699.) The availability of the defense must be determined under federal law (*Audit Services, Inc.* v. *Rolfson* (9th Cir. 1981) 641 F.2d 757, 762) which does not require that it be specifically pleaded. (*Anthan* v. *Professional Air Traffic Controllers* (8th Cir. 1982) 672 F.2d 706, 709.)

The union's declaration that through September 1977, Nor-Cal was carried on the records of the trust fund as a member of a multiemployer association, GCC, directly contradicts Nor-Cal's declaration that it has not been a member of GCC. The record indicates that the union properly raised below the issue of Nor-Cal's membership in the GCC, which was a party to the 1968-1971, 1974-1977, and 1977-1980 master agreements.

The United States Supreme Court recently noted that "[m]ultiemployer bargaining has continued to be the preferred bargaining mechanism in many industries," and cited a 1978 survey indicating that 42 percent of major bargaining agreements were multiemployer agreements. (*Charles D. Bonanno Linen Service, Inc.* v. *NLRB* (1982) 454 U.S. 404, 410 [70 L.Ed.2d 656, 662, 102 S.Ct. 720].) The United States Supreme Court reiterated that in many industries multiemployer bargaining is "'a vital factor in the effectuation of the national policy of promoting labor peace through strengthened collective bargaining.'" (*Bonanno, supra*, 454 U.S. at p. 409 [70 L.Ed.2d at p. 662], quoting from *Labor Board* v. *Truck Drivers Union* (1957) 353 U.S. 87, 95 [1 L.Ed.2d 676, 681, 77 S.Ct. 643].)

In *Northern Cal. Dist. Council of Hod Carriers* v. *Pennsylvania Pipeline, Inc.* (1980) 103 Cal.App.3d 163, 170-171 [162 Cal.Rptr. 851], cert. den. 449 U.S. 874 [66 L.Ed.2d 95, 101 S.Ct. 216], this court (Div. 2) held that once an employer delegates authority to a multiemployer association, he is bound, and explained at page 171, *supra*: "The significant fact is the delegation of authority, not the employer's membership in the association (*Cox Corp.* v. *N.L.R.B.* (6th Cir. 1979) 593 F.2d 261, 262)." Agency is a question of fact. (*N.L.R.B.* v. *R. O. Pyle Roofing Co.* (9th Cir. 1977) 560 F.2d 1370.)

Further, there are questions of fact as to whether and when Nor-Cal ever delegated authority to GCC and as to what occurred in the realignment of the contracting parties to the 1971-1974 and 1974-1977 master agreements.

Finally, "a collective bargaining agreement is not an ordinary contract" (*John Wiley & Sons* v. *Livingston* (1963) 376 U.S. 543, 550 [11 L.Ed.2d 898, 905, 84 S.Ct. 909, 914] and is not governed by the common law concepts that control private contracts. (*Carpenters 46 Northern Cal. Counties Conf. Bd.* v. *Valentine* (1982) 131 Cal.App.3d 534 [182 Cal.Rptr. 500] filed May 7, 1982.) "[I]t is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate." (*Steelworkers* v. *Warrior & Gulf Co.* (1959) 363 U.S. 574, 578 [4 L.Ed.2d 1409, 1415, 80 S.Ct. 1347, 1351].)

A labor contract does not simply expire in the way other contracts might, as employers have continuing relationships with their employees and employee bargaining units. (*Scenic Land Properties* v. *Local 162, supra*, 103 L.R.R.M. 2129.) The NLRB has held that because of this continuing relationship, the word "terminate" has a different meaning from that which it holds in other commercial contexts. (*Ted Hicks and Associates, Inc.* (1977) 232 N.L.R.B. 712 [97 L.R.R.M. 1500].) Here, there is a question of fact as to whether by signing the memorandum agreement Nor-Cal recognized that it was inaugurating a continuing relationship. If so, Nor-Cal's failure to perform its contractual obligations would constitute a breach of the contract and not a termination of the collective bargaining agreement. (Cf. *Todd* v. *Jim McNeff, Inc., supra*, 667 F.2d at p. 804.)

The summary judgment is reversed.

Barry-Deal, J., and Cook, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.