[No. A032291. First Dist., Div. Two. Apr. 17, 1987.]

CARPENTERS 46 NORTHERN CALIFORNIA COUNTIES
CONFERENCE BOARD, Plaintiff and Appellant, v.
JONES & ANDERSON, Defendant and Respondent.

**COUNSEL**

Robert M. Hirsch and Van Bourg, Weinberg, Roger & Rosenfeld for Plaintiff and Appellant.

Mark D. Jordan and Jordan & Smith for Defendant and Respondent.

## Opinion

KLINE, P. J.—Carpenters 46 Northern California Counties Conference Board (hereinafter Carpenters) appeals a judgment denying its petition for confirmation of an arbitration award against Jones & Anderson.

### FACTUAL & PROCEDURAL BACKGROUND

Jones & Anderson is a contractor involved in construction activities in Sonoma County, California. Carpenters is an organization comprised of affiliated local unions and district councils which represent workers employed as carpenters.

On June 16, 1980, Carpenters entered into a labor agreement with Northern California Home Builders Conference and the California Contractors Council Incorporated and their respective members. The agreement was titled "Carpenters Master Agreement for Northern California" (hereinafter Master Agreement) and was effective from June 16, 1980, through June 15, 1983. Jones & Anderson did not sign this Master Agreement, but admits that it signed a memorandum agreement binding it to the 1980-1983 Master Agreement.

The memorandum or short form agreement executed by Jones & Anderson, colloquially referred to as a "me too" agreement, was never introduced into evidence and its terms are nowhere set forth in the record.[1]

Section 2 of the Master Agreement was titled "Term of Agreement" and provided in pertinent part: "This Agreement shall remain in full force and effect from the 16th day of June, 1980, through the 15th day of June, 1983, and shall continue thereafter from year to year unless either party, not more than ninety (90) days nor less than sixty (60) days prior to the 15th day of June *of any subsequent year,* serves written notice on the other of its desire to change, modify, amend, supplement, renew or extend this Agreement." (Italics added.)

On April 15, 1983, a successor Master Agreement was entered into between Carpenters and the "BUILDING INDUSTRY ASSOCIATION OF

---

[1] At the superior court hearing on the confirmation petition, counsel for Jones & Anderson reminded the court that it was unable to supply a copy of the memorandum agreement it had executed. Counsel for Carpenters agreed to furnish their copy of the agreement to the court. This was apparently never done. Jones & Anderson did introduce a copy of a memorandum agreement executed by a different employer in March 1985 and relating to the successor 1983-1986 Master Agreement as evidence that the contract termination provisions had changed.

NORTHERN CALIFORNIA, as the successor to the Northern California Home Builders Conference, on behalf of its authorizing members of the California Contractors Council, Inc. and Millwright Employers Association . . . ." It provided in pertinent part: "This Agreement amends, modifies, supplements, changes, extends and renews the Agreement dated June 16, 1971, June 16, 1974, June 16, 1977, June 16, 1980, and is effective June 16, 1983." Section 2 provided: "This Agreement shall remain in full force and effect from the 16th day of June, 1983, through the 15th day of June 1986, and shall continue thereafter from year to year unless either party, not more than ninety (90) days nor less than sixty (60) days prior to the 15th day of June of any subsequent year, serves written notice on the other of its desire to change, modify, amend, supplement, renew or extend this Agreement."

In late March or early April 1984, Jones & Anderson advised Carpenters by letter that "We hereby cancel our contract agreement (set forth in the Carpenters Master Agreement for No. Calif., June '80 to '83, effective 5/3/82) with the 'Union', defined in our memorandum agreement. [¶] Please notify us before April 15th if further action by us is necessary." Carpenters responded that the notice of cancellation was untimely and that the existing Master Agreement "requires by its terms to remain in effect until June 15, 1986."

The underlying grievance occurred on June 18, 1984, when Carpenters challenged Jones & Anderson's hiring of nonunion employees at two job sites. In an exchange of correspondence, Jones & Anderson responded to the grievance by sending a letter through their attorney to Carpenters, advising the union that the collective bargaining agreement had expired on June 15, 1984. Jones & Anderson stated that "it was ready willing and able to commence collective bargaining; . . . ." Carpenters replied that the termination was unacceptable as the Master Agreement had been amended and renewed and that a contractor could not cancel the agreement except during the "window" period immediately preceeding the termination date of the Master Agreement.

On August 15, 1984, the arbitration hearing was held. The arbitrator found that "the employer is party to and bound to the current Master Agreement." The arbitrator also found that Jones & Anderson had violated the Master Agreement and that the grievance filed by Carpenters was meritorious and ordered Jones & Anderson to comply with the Master Agreement. The award included an order that Jones & Anderson make whole employees on the union's out-of-work list by paying back wages and fringe benefits.

Carpenters thereafter petitioned the superior court for confirmation of the arbitration award. The petition was denied upon the ground that "The contract between the parties was terminated as of June 15, 1984 by notice given under the terms of the agreement by Respondent to Petitioner. The grievance of June 18, 1984 was beyond the term of the contract. The arbitrator exceeded his jurisdiction." Findings of fact and conclusions of law were waived by the parties and a formal order denying the petition for confirmation of the award was filed on July 23, 1985. The court awarded costs and attorney fees to Jones & Anderson. A timely notice of appeal followed.

## DISCUSSION

1. *Whether Jones & Anderson is bound to the 1983-1986 Master Agreement.*

■ As this case involves the exercise of a state court's concurrent jurisdiction under section 301 of the Labor-Management Relations Act (29 U.S.C. § 185), we must apply federal substantive law. (*Northern Cal. Dist. Council of Laborers* v. *Robles Concrete Co.* (1983) 149 Cal.App.3d 289, 292 [196 Cal.Rptr. 776] [and cases there cited]; *Rebeiro* v. *Nor-Cal Integrated Ceilings* (1982) 135 Cal.App.3d 522, 528 [187 Cal.Rptr. 256]; *Irwin* v. *Carpenters Health and Welfare Trust Fund* (9th Cir. 1984) 745 F.2d 553, 555; see *Carpenters 46 Northern Cal. Counties Conf. Bd.* v. *Valentine* (1982) 131 Cal.App.3d 534, 540-541 [182 Cal.Rptr. 500].)

■ "Memorandum or short-form agreements of the type here in issue are commonly used in the construction industry, and courts have repeatedly recognized the validity of these agreements. (*Const. Teamsters, etc.* v. *Con Form Const. Corp.* (9th Cir. 1981) 657 F.2d 1101; *Seymour* v. *Coughlin Co.* (9th Cir. 1979) 609 F.2d 346; *Ted Hicks and Associates, Inc.* v. *N.L.R.B., supra,* 572 F.2d 1024, 1025; *N.L.R.B.* v. *R. J. Smith Const. Co., Inc.* (D.C. Cir. 1976) 545 F.2d 187; *Bugher* v. *Southland Fabricators & Erectors, Inc.* (W.D.La. 1978) 452 F.Supp. 870; accord, *Scenic Land Properties* v. *Local 162* ( 1979) 103 L.R.R.M. 2127, affd. without opn. (9th Cir. 1981) 661 F.2d 942.) The above authorities clearly indicate that a signatory to a memorandum agreement can agree to be bound by future modifications, extensions and renewals of the master agreement. [¶] Analysis of the agreements involved provides the best evidence of the intent of the parties. (*Const. Teamsters, etc.* v. *Con Form Const. Corp., supra,* at p. 1103.)" (*Rebeiro* v. *Nor-Cal Integrated Ceilings, supra,* 135 Cal.App.3d 522, 529.)

■ Here, in the absence of the memorandum agreement executed by Jones & Anderson, the only agreements before us are the 1980-1983 and

1983-1986 Master Agreements. We look to the language of the 1980-1983 Master Agreement to determine whether Jones & Anderson effectively terminated their labor agreement. The language of this Master Agreement permits the employer to terminate by serving written notice on the union 60-90 days prior to June 15 of *any* succeeding year. No other language in the 1980-1983 Master Agreement nullifies this provision in the event of renewal of or amendment to that Master Agreement. Accordingly, we conclude that section 2 authorized Jones & Anderson to terminate the agreement, as it did, during the "window" period in 1984.

Our conclusion is in accord with *Carpenters Local 743* v. *Armstrong & Smith Construction* (1982) 261 NLRB No. 28 p. 425 [110 LRRM 1085] (hereafter *Armstrong & Smith*). There the memorandum agreement signed by the employer during the term of a 1974-1977 Master Labor Agreement provided: "This Memorandum Agreement shall remain in full force and effect until June 15, 1977, and shall continue from *year* to *year thereafter* unless either party shall give written notice to the other of a desire to change or cancel it at least sixty (60) days prior to June 15, 1977, *or June 15, of any succeeding year.* . . . The Contractor and the Unions shall be bound by any renewals or extensions of the Master Labor Agreement and the Trust Agreement, or any new agreements unless an appropriate written notice is given to the other party at least sixty (60) days prior to June 15, 1977, *or any subsequent year* of their intent not to be bound by any new, renewed or extended Agreement. [Italics supplied.]' " (*Armstrong & Smith, supra,* 110 L.R.R.M. at p. 1086.) The NLRB held that employers were not bound by the memorandum agreement to the term of the successor 1977-1980 Master Labor Agreements, where they had furnished written notices of termination in March and April 1979. The board held that the "express language of the termination provisions of the memorandum agreements refutes the contention of Respondents and the findings of the Administrative Law Judge that those agreements can be terminated only during the year in which the underlying Master Labor Agreement expires." (110 L.R.R.M. at p. 1087.) Thus employer notices of termination in March and April 1979 were held effective.

The board also pointed out that, "the resolution of the issue involved herein is not materially aided by prior cases involving short-form agreements which bind their signatories to comply with the provisions contained in collective-bargaining agreements to which they are not signatories. Thus, the Unions' contention that Ted Hicks and Associates, Inc., 232 NLRB 712, 97 LRRM 1500 (1977), controls the instant case is misplaced. In that case, the memorandum agreement did not contain an expiration date or express provision regarding its termination whereas the memorandum

agreements in the instant case contain specific provisions for their terminations. Hence, we shall examine the pertinent provisions of the memorandum agreements—the only contracts to which the parties herein are signatories." (*Armstrong & Smith, supra,* 110 L.R.R.M. at p. 1087.) The board concluded that the specific termination provisions of the memorandum agreements superseded and controlled the general provisions of the Master Labor Agreements. Finally, as an additional ground for allowing termination, the board referred to the union's course of conduct in allowing other employers with whom the union had memorandum agreements with similar language to terminate those agreements prior to the expiration year of the underlying Master Labor Agreement. (*Id.,* at p. 1088.)

*Armstrong & Smith* is so factually similar to the present case that we could not reach a different conclusion without repudiating the National Labor Relations Board's analysis. We decline to do so because we believe that analysis is correct and that any other reading of the termination provision here in question would be wholly unreasonable. If, as Carpenters maintains, the parties to the Master Agreement never intended this result—a claim vigorously disputed by Jones & Anderson—then they simply did not say what they meant in the prolix instruments that we must look to as defining their respective rights.

The cases cited by appellant Carpenters which hold an employer bound to successive master agreements are distinguishable.

In *Const. Teamsters, Etc.* v. *Con Form Const. Corp.* (9th Cir. 1981) 657 F.2d 1101, the Ninth Circuit affirmed a district court judgment that a short-form agreement did not terminate automatically at the expiration of the initial underlying master labor agreement, but that it was cancelled by a letter from the employer, effective on the date the letter was sent. (*Id.,* at pp. 1102-1103.) The court concluded that the provisions of the short form agreement and the master labor agreement must be read together and that the parties intended to be bound to successive master labor agreements "unless written notice of termination was received." (*Id.,* at p. 1104.) Unlike the present case, however, the employer in *Con Form Const. Corp.* did not provide such notice of termination.

The memorandum agreement in *Ted Hicks and Associates, Inc.* v. *N. L. R. B.* (5th Cir. 1978) 572 F.2d 1024, contained no expiration date, but did provide that the parties would be bound by "any modifications, extensions, or renewals' " of a 1969 collective bargaining contract. The 1969 contract provided that the parties should be bound by the contract through its term and from year to year thereafter unless notice of modification or termina-

tion was furnished at least 90 days prior to the anniversary date. (*Id.,* at p. 1025.) Although concluding that the agreement did not terminate upon the negotiation of subsequent master agreements containing nearly identical terms, the court noted that the employer could terminate upon providing 90 days notice to the union in accordance with the provisions of the contract incorporated in the memorandum agreement. (*Id.,* at p. 1027, fn. 2.) The employer in *Ted Hicks* never gave such notice.

In these cases, as in *Rebeiro* v. *Nor-Cal Integrated Ceilings, supra,* 135 Cal.App.3d 522, and *Scenic Land Properties, Inc.* v. *Local 162* (9th Cir. 1979) 103 L.R.R.M. 2127, affirmed without opinion (9th Cir. 1981) 661 F.2d 942, the parties agreed to comply with "any modifications, changes, extensions, or renewals" of the master agreement. The employers were held bound to successor master labor agreements *unless and until the employer furnished appropriate notice of termination* as provided in the master agreement. (*Scenic Land Properties, Inc.* v. *Local 162, supra,* at p. 2128; *Rebeiro* v. *Nor-Cal Integrated Ceilings, supra,* at p. 530.) As explained by the court in *Rebeiro* v. *Nor-Cal Integrated Ceilings, supra*: "the memorandum agreement by its terms necessarily incorporated the termination provisions of the master agreement. Given the ongoing nature of the collective bargaining relationship, the better result is to view the agreements as voidable by either *party on notice* as provided in the master agreement. [Citation.]" (*Id.,* at p. 530, italics added.)

The instant case is different from those relied upon by appellant because the employer here *did* provide the union notice of termination in the manner prescribed by the Master Agreement. The termination therefore was effective.[2]

*2. Whether the grievance and arbitration provisions of the 1980-1983 Master Agreement survived termination of the agreement.*

 Appellant contends that even if Jones & Anderson did terminate the Master Agreement on June 15, 1984, the employer remained obligated

---

[2]*Irwin* v. *Carpenters Health and Welfare Trust Fund, supra,* 745 F.2d 553 is not to the contrary. The Ninth Circuit there held that an employer's notice of termination which was served almost two years prior to the designated notice period was ineffective. Federal law required that an attempt to exercise a power of termination specified in a contract in a manner other than as specified will be ineffective. (*Id.,* at p. 557.) The court held that there was no basis for applying state law which was incompatible with the federal policy of strictly interpreting unambiguous terms in labor agreements. As we have discussed, the employer in this case exercised its power of termination within the period specified in the 1980-1983 Master Agreement.

to arbitrate the grievance arising after the termination date but prior to any subsequently negotiated collective bargaining agreement or impasse.

It is well established that termination of a collective bargaining agreement does not necessarily extinguish a party's duty to arbitrate grievances arising under the contract. (*Nolde Bros., Inc.* v. *Bakery Workers* (1977) 430 U.S. 243, 251 [51 L.Ed.2d 300, 308, 97 S.Ct. 1067]; *O'Connor Co.* v. *Carpenters Union No. 1408* (9th Cir. 1983) 702 F.2d 824, 825.) However, this general proposition does not determine this case.

In *O'Connor Co.* v. *Carpenters Union No. 1408, supra,* 702 F.2d 824, the Ninth Circuit Court of Appeals rejected the identical contention raised here. Because we find it persuasive we quote at length from that opinion: "Clearly, federal policy favors arbitration of labor disputes. *See e.g., Nolde Brothers, Inc.* v. *Local No. 358 Bakery and Confectionary Workers Union, supra,* 430 U.S. at 254, 97 S.Ct. at 1073. Even so, 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit.' *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). The Union's position in this case is untenable because the labor dispute involved here arose following termination of the old agreement and was not covered by that contract. *See Diamond Glass Corporation v. Glass Warehouse & Paint Handlers Local Union 206,* 682 F.2d 301 (2nd Cir.1982). It is axiomatic that an agreement to arbitrate found in a terminated labor contract and arising after the contract terminated cannot be applied to a grievance which the parties have not agreed would be subject to arbitration after expiration of the contract. The Company was not a party or signatory to a subsequent 1980-1983 carpenters master agreement (which we assume the Union had apparently negotiated with other employers) and was not required to arbitrate any grievance claimed to have arisen under that agreement." (*Id.,* at p. 825.)

Cases cited by appellant which require the employer to arbitrate grievances despite termination of the collective bargaining agreement are inapposite. Most arose in the context of ongoing contract negotiations between union and employer either after termination of the collective bargaining agreement or prior to initiation of such agreement. (See *George Day Const.* v. *United Broth. of Carpenters* (9th Cir. 1984) 722 F.2d 1471, 1477-1479; *Labor Board* v. *Katz* (1962) 369 U.S. 736, 739-742 [8 L.Ed.2d 230, 233-236, 82 S.Ct. 1107].)

In *Holly Sugar Corp.* v. *Distillery, Rectifying, Wine & A. W. I. U.* (1969) 412 F.2d 899, the parties were operating under a 1965 successor agreement

to a 1962 agreement which provided the basis for the grievance, involving classification of a painter. Although the grievance itself arose during the time period covered by the 1962 contract, the grievance was not filed within the 30-day limitation period specified in the contract. The court affirmed the arbitrator's award on the grounds that the 30-day limitation was tolled by the employer's failure to provide notice to the union of the establishment of the painter job and that there was "no inherent prohibition against arbitration awards which are based upon the violation of an expired collective bargaining agreement." (*Id.,* at p. 903.)

■ The employer's conduct after termination of an agreement may require it to arbitrate disputes arising under the agreement where such conduct evinces an intent to arbitrate the grievance. (*George Day Const.* v. *United Broth. of Carpenters, supra,* 722 F.2d at pp. 1474, 1479.) *Nolde Bros. Inc., supra,* 430 U.S. 243, the seminal case in this area, involved a refusal by an employer to pay severance pay pursuant to a terminated contract upon termination of the contract and closing of the plant. The court held the dispute subject to arbitration because the "dispute, therefore although arising *after* the expiration of the collective-bargaining contract, clearly arises *under* that contract." (*Id.,* at p. 249 [51 L.Ed.2d at p. 307], italics in original.)

■ Here, although Jones & Anderson offered to enter into negotiations with Carpenters following termination, Carpenters steadfastly refused on grounds that the employer had not effectively terminated its participation in the Master Agreement. Jones & Anderson did not by its conduct after termination evidence an intent to be bound by arbitration or grievance provisions of either the 1980-1983 Master Agreement or the subsequent 1983-1986 Master Agreement which it never executed. (See *O'Connor Co.* v. *Carpenters Union No. 1408, supra,* 702 F.2d 824.)

3. *Whether the court erred in awarding Jones & Anderson attorneys' fees.*

■ Appellant contends that the trial court erred in awarding attorneys' fees to Jones & Anderson. The 1980-1983 Master Agreement provided that "Any party who fails or refuses to comply with a decision of a Board of Adjustment or an award of the Aribitrator, as the case may be, shall be responsible for reasonable attorneys' fees for the filing and trial of any petition to confirm and enforce said decision or award in addition to all other remedies available through law, unless the petition is denied."

Since Jones & Anderson did not file the petition to confirm the decision of the arbitrator—indeed, its refusal to comply with that decision necessitated

filing of the petition by Carpenters—it was not entitled to attorneys' fees under the foregoing provision of the Master Agreement. Though the trial court did not in its order specify any authority for the award of attorneys' fees, we assume, with the parties, that the employer's entitlement to such fees was found in Civil Code section 1717,[3] the basis upon which Jones & Anderson claimed the right.

Carpenters contends that attorneys' fees may not be recovered under this state statute without impermissibily undermining uniformity in the application of federal labor law. (*Burke* v. *French Equipment Rental, Inc.* (9th Cir. 1982) 687 F.2d 307; *Waggoner* v. *Northwest Excavating, Inc.* (9th Cir. 1981) 642 F.2d 333, vacated and remanded on other grounds, 455 U.S. 931 [71 L.Ed.2d 640, 102 S.Ct. 1417] (1982); reaffd. 685 F.2d 1224 (9th Cir. 1982).) We agree.

*Burke* v. *French Equipment Rental, Inc., supra,* 687 F.2d 307 and *Waggoner* v. *Northwest Excavating, Inc., supra,* 642 F.2d 333, are dispositive of the issue. As stated by the court in *Waggoner*: "We read *Alyeska* [*Alyeska Pipeline Co.* v. *Wilderness Society* (1975) 421 U.S. 240 (44 L.Ed.2d 141, 95 S.Ct. 1612)] . . . as imposing strict limits on the use of state law to support attorney's fees awards. Those limits were not overborne by the federal environmental policies asserted by the Wilderness Society in *Alyeska*. Nor are those limits overborne by the policies asserted by Northwest in this case. In fact, federal labor policy supports the district court's decision to decline to award fees under section 1717. 'Courts must always evaluate litigation under 301(a) with an eye to the policy of uniformity which that statute embodies.' *Seymour* v. *Hull & Moreland Engineering,* 605 F.2d 1105, 1111 (9th Cir. 1979). Uniformity would be defeated, with few, if any, countervailing benefits, by applying fifty different state laws on the issue of attorney's fees. Of course, this example is distinguishable from the situation where the parties provide for attorney's fees in their collective bargaining agreement." (*Waggoner* v. *Northwest Excavating, Inc., supra,* at pp. 338-339.) Here, the contractual attorneys' fee provision could not run against Carpenters as the party seeking to *enforce* the arbitrator's award.

Carpenters also argues, and again we agree, that attorneys' fees are available under section 301 of the Labor-Management Relations Act (LMRA)

---

[3] Civil Code section 1717, subdivision (a), provides in material part as follows: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the prevailing party, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements."

only "when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons . . . .' " (*Alyeska Pipeline Co.* v. *Wilderness Society, supra,* 421 U.S. 240, 258-259 [44 L.Ed.2d 141, 154].) "[A]n unjustified refusal to abide by an arbitrator's award may equate an act taken in bad faith, vexatiously or for oppressive reasons. [Citations.] It is clear that bad faith supporting an award of attorneys' fees may be found in conduct that led to the lawsuit or in conduct occurring during the course of the action. [Citations.] Moreover, '[b]ad faith may be demonstrated by showing that a defendant's obstinacy in granting a plaintiff his clear legal rights necessitated resort to legal action with all the expense and delay entailed in litigation.' *Huecker* v. *Milburn,* 538 F.2d 1241, 1245 n. 9 (6th Cir. 1976). The award of attorneys' fees in the latter context satisfies a dual purpose—deterrence and compensation. The threat of an award of attorneys' fees tends to deter frivolous dilatory tactics. The award also compensates a plaintiff 'for the added expense of having to vindicate clearly established rights in court.' *Id.* " (*Intern. Union of P.I.W.* v. *Western Indus. Main.* (9th Cir. 1983) 707 F.2d 425, 428.)

There appears no indication of bad faith by Carpenters at any point in this litigation. Nor is there any indication the trial court awarded fees for this reason, rather than under a mistaken impression that Civil Code section 1717 would allow the reciprocal award of fees to a prevailing party.

In *Northern Cal. Dist. Council of Laborers* v. *Robles Concrete Co., supra,* 149 Cal.App.3d 289, another division of this court upheld a trial court's award of attorneys' fees to an employer under section 301 of the LMRA without requiring a finding of bad faith or its equivalent on the part of the union. According to the court: "Federal case law makes clear that in a suit brought under section 301 of the LMRA, the award of attorneys' fees is within the discretion of the trial court. (*Intern. Ass'n. of Machinists* v. *Texas Steel Co.* (5th Cir. 1976) 538 F.2d 1116, 1121-1122; *General Drivers & H.U., L. 554* v. *Young Hay Transp. Co.* (8th Cir. 1975) 522 F.2d 562, 568.) '[S]tate procedural law may not be applied in such [LMRA, § 301] cases if it would impede the uniform application of the federal statute essential to effectuate its purpose. [Citations.]' (*Safeway Stores, Inc.* v. *Brotherhood of Teamsters, supra,* 83 Cal.App.3d 430, 436.) In accordance with the desirability of uniform decisions in the area of labor relations, we hold that the state court has the discretion to award attorneys' fees in an LMRA section 301 case." (*Id.,* at p. 295.)

We think this broad statement goes too far. The two cases cited by the *Robles* court rely on the well-established proposition that fees may be awarded in section 301 cases as an item of damage against a party who,

without justification, refuses to abide by an arbitration award. Federal case law and the policy requiring uniformity in the application of federal labor law by state courts do not permit us to condone the award of attorneys' fees to the prevailing party in section 301 cases on the sole basis that the party prevailed at trial.

Carpenters did not refuse to abide by the arbitrator's award. To the contrary, as we have indicated, it petitioned to confirm the arbitrator's decision. The merits of the contract dispute do not seem to us to have been so obvious as to warrant a determination that Carpenters' filing of the grievance was done in bad faith.

We therefore see no basis for the court's award of attorneys' fees.

The portion of the judgment awarding attorneys' fees to respondent is reversed. In all other respects, the judgment is affirmed.

Rouse, J., and Smith, J., concurred.