[No. B114148. Second Dist., Div. Five. July 21, 1998.]

WAREHOUSE, PROCESSING, DISTRIBUTION WORKERS UNION, LOCAL 26, Plaintiff and Appellant, v.
HUGO NEU PROLER COMPANY, Defendant and Respondent.

**COUNSEL**

Van Bourg, Weinberg, Roger & Rosenfeld, James G. Varga and James Rutkowski for Plaintiff and Appellant.

Hill, Farrer & Burrill, Jonathan M. Brandler and Michael S. Turner for Defendant and Respondent.

## OPINION

**TURNER, P. J.—**

### I. INTRODUCTION

The present case had its genesis in a collective bargaining agreement which required labor and management to arbitrate the application of its terms to a dispute over the seniority rights of a union member. Warehouse, Processing, Distribution Workers Union, Local 26 (the union) appeals from an order awarding $13,840 in attorney's fees to Hugo Neu Proler Company (the employer) pursuant to Labor Code section 1128.[1] Section 1128 governs attorney's fee awards in actions involving arbitration under a collective bargaining agreement.[2] The United States Supreme Court has held that in state court litigation to enforce arbitration awards under collective bargaining agreements within the purview of section 301 of the Labor Management Relations Act of 1947 (61 Stat. 156; see 29 U.S.C.A. § 185) (LMRA), as here, federal law must be applied.[3] We conclude the preemptive scope of LMRA section 301 extends to the attorney's fee award in this case which involved: a dispute over the terms of a collective bargaining agreement; an arbitration conducted in compliance with the terms of the collective bargaining agreement; and post-award litigation concerning the scope of the arbitrator's powers under the collective bargaining agreement. Therefore, section

---

[1]All further references to section 1128 are to section 1128 of the Labor Code.

[2]Section 1128 provides as follows: "(a) Where a party to a collective bargaining agreement prevails in a court action to compel arbitration of disputes concerning the collective bargaining agreement, the court shall award attorney's fees to the prevailing party unless the other party has raised substantial and credible issues involving complex or significant questions of law or fact regarding whether or not the dispute is arbitrable under the agreement. [¶] If the dispute is later found to be not arbitrable under the collective bargaining agreement, any award made pursuant to this subdivision shall be vacated and those sums paid to satisfy the award shall be reimbursed to the payor. [¶] (b) Where a party to a collective bargaining agreement appeals the decision of an arbitrator regarding disputes concerning the collective bargaining agreement, the court shall award attorney's fees to the prevailing appellee unless the appellant has raised substantial issues involving complex or significant questions of law. [¶] (c) Where a party to a collective bargaining agreement prevails in a court action to compel compliance with the decision or award of an arbitrator or a grievance panel regarding disputes concerning the collective bargaining agreement, the court shall award attorney's fees to the prevailing party unless the other party has raised substantial issues involving complex or significant questions of law. [¶] (d) This section shall not apply to public employment."

[3]The parties do not dispute the applicability of LMRA section 301 to this case.

1128, as applied in this case, is preempted by federal law. Further, there has been no assertion or finding consistent with the federal standard for attorney's fee awards, that the union acted in bad faith, vexatiously, wantonly, or for oppressive reasons. Accordingly, we reverse the order granting attorney's fees to the employer.

## II. BACKGROUND

The union, pursuant to a collective bargaining agreement, filed a grievance on behalf of an employee. The matter was heard by an arbitrator. At issue was the application of the collective bargaining contract's terms to a dispute concerning seniority. In his written award, the arbitrator framed the issue as follows: "Did the Company violate the Contract when it refused to allow the Grievant, who was working the first shift at the time, to bump a less senior Crane Operator from his third shift assignment after the Grievant's start time was changed from 6:00 a.m. to 9:00 a.m. and then to 10:00 a.m., or when it assigned overtime to the less senior employee?" The arbitrator's award incorporated by reference portions of articles 2 and 6 of the collective bargaining agreement. The arbitrator's written analysis explicitly applied the largely undisputed facts to the provisions of the collective bargaining agreement. The award was as follows: "The Company did not violate the Contract when it refused to allow the Grievant, who was working on the first shift at the time, to bump a less senior Crane Operator from his third shift assignment after the Grievant's start time was changed from 6:00 a.m. to 9:00 a.m. and then to 10:00 a.m., or when it assigned overtime to the less senior employee."

The union filed a petition to vacate the arbitration award on the grounds the arbitrator had exceeded his powers. The employer filed a petition to confirm the award. The grounds for the petition to vacate the award were as follows: "The Union hereby alleges that the Arbitration Award must be vacated because the Arbitrator exceeded his powers when he read into the contract that the Employer had the right to assign various start times to employees when in fact the collective bargaining agreement only provides for recognition of 'shifts' and not 'starting times.' The Arbitrator added to the contract, when [he] found the Employer had the right to start employees at various starting times thereby vitiating the contractual shift times and employees' seniority rights. The Arbitrator further denied the opportunity for overtime to the Grievant based on the premise that the Employer did not transfer Mr. Garcia's shift but simply changed his start time. By adding to the contract, the Arbitrator exceeded his power and the Award [cannot] be corrected without [a]ffecting the merits of the decision upon the controversy

submitted." The prayer for relief in the petition to vacate the award sought a rehearing of the dispute before the same or a different arbitrator. The papers which were filed in connection with the proceedings which ultimately led to the award being confirmed discussed whether the arbitrator exceeded his powers in applying the collective bargaining contract. The trial court entered an order denying the union's petition to vacate the award. Also, the trial court granted the employer's petition to confirm the award. The employer sought attorney's fees pursuant to section 1128. The union argued the state statute was preempted by federal law. The trial court granted the request for attorney's fees.

## III.   DISCUSSION

### A.   *Federal Substantive Law Governs Enforcement of Arbitration Under Collective Bargaining Agreements*

Section 301 of the LMRA provides: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." (29 U.S.C.A. § 185(a).) The United States Supreme Court has observed that Congress never explicitly stated the extent to which it intended LMRA section 301 to preempt state law. (*Allis-Chalmers Corp.*v. *Lueck* (1985) 471 U.S. 202, 208-209 [105 S.Ct. 1904, 1909-1910, 85 L.Ed.2d 206]; *Evans* v. *Einhorn* (7th Cir. 1988) 855 F.2d 1245, 1249; *Paige* v. *Henry J. Kaiser Co.* (9th Cir. 1987) 826 F.2d 857, 861.)  ▉  The general parameters of federal preemption in the absence, as here, of an express preemption clause, were summarized by the United States Supreme Court in *Freightliner Corp.* v. *Myrick* (1995) 514 U.S. 280, 287 [115 S.Ct. 1483, 1487, 131 L.Ed.2d 385], as follows: "We have recognized that a federal statute implicitly overrides state law either when the scope of a statute indicates that Congress intended federal law to occupy a field exclusively, *English* v. *General Elec. Co.* [(1990) 496 U.S. 72, 78 [110 S.Ct. 2270, 110 L.Ed.2d 65]], or when state law is in actual conflict with federal law. We have found implied conflict pre-emption where it is 'impossible for a private party to comply with both state and federal requirements,' [*id.* at p. 79], or where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' *Hines* v. *Davidowitz,* 312 U.S. 52, 67 . . . (1941)." As discussed below, with respect to the enforcement of arbitration under a collective bargaining agreement, the United States Supreme Court has. held that federal substantive law governs and must be uniformly applied.

The United States Supreme Court has construed LMRA section 301 expansively. It has held that section 301 of the LMRA: confers federal court jurisdiction over controversies involving collective bargaining agreements; authorizes the United States courts to develop a body of federal law for enforcement of those agreements; reserves to the state courts concurrent jurisdiction over claims within the purview of LMRA section 301; but requires that state courts apply federal law in deciding those cases. (*Lingle* v. *Norge Division of Magic Chef, Inc.* (1988) 486 U.S. 399, 403 & fn. 2 [108 S.Ct. 1877, 1880, 100 L.Ed.2d 410].) Further, the United States Supreme Court has held that LMRA section 301 "governs claims founded directly on rights created by collective-bargaining agreements, and also [state law] claims 'substantially dependent on analysis of a collective-bargaining agreement.'" (*Caterpillar Inc.* v. *Williams* (1987) 482 U.S. 386, 394-395 [107 S.Ct. 2425, 2431, 96 L.Ed.2d 318]; accord, *Lingle* v. *Norge Division of Magic Chef, Inc., supra*, 486 U.S. at p. 410, fn. 10 [108 S.Ct. at p. 1883].) We are here concerned with an action to enforce an arbitration provision, a right specifically created by a collective bargaining agreement. We are not concerned with whether a state law contract or tort cause of action is preempted by LMRA section 301.

That federal substantive law applies to claims founded directly on rights created by a collective bargaining agreement was established in *Textile Workers* v. *Lincoln Mills* (1957) 353 U.S. 448, 457 [77 S.Ct. 912, 918, 1 L.Ed.2d 972]. In *Lincoln Mills,* a union brought suit in federal district court to compel arbitration of grievances under a collective bargaining agreement. The issue was whether the federal courts had authority to order arbitration under a collective bargaining agreement. The United States Supreme Court held LMRA section 301 is not just jurisdictional; rather, the court held, "[I]t authorizes federal courts to fashion a body of federal law for the enforcement of . . . collective bargaining agreements . . . ." (*Id.* at pp. 450-451 [77 S.Ct. at p. 915].) The Supreme Court examined the legislative history of LMRA section 301 and concluded the legislation "expresses a federal policy that federal courts should enforce these agreements on behalf of or against labor organizations and that industrial peace can be best obtained only in that way." (*Id.* at p. 455 [77 S.Ct. at p. 917].) Moreover, the court held that the substantive law to be applied in suits under LMRA section 301 "is federal law, which the courts must fashion from the policy of our national labor laws." (*Id.* at p. 456 [77 S.Ct. at p. 918].) The court held: "Federal interpretation of the federal law will govern, not state law. [Citation.] But state law, if compatible with the purpose of [LMRA section] 301, may be resorted to in order to find the rule that will best effectuate the federal policy. [Citation.] Any *state law* applied, however, will be absorbed as federal law and *will not*

*be an independent source of private rights.*" (*Id.* at p. 457 [77 S.Ct. at p. 918], italics added; accord, *Complete Auto Transit, Inc.* v. *Reis* (1981) 451 U.S. 401, 405 [101 S.Ct. 1836, 1839-1840, 68 L.Ed.2d 248]; *Smith* v. *Evening News Assn.* (1962) 371 U.S. 195, 199 [83 S.Ct. 267, 269-270, 9 L.Ed.2d 246].)

The preemptive effect of LMRA section 301 was considered in *Teamsters Local* v. *Lucas Flour Co.* (1962) 369 U.S. 95, 103-104 [82 S.Ct. 571, 576-577, 7 L.Ed.2d 593]. The question in *Lucas Flour* was whether a state court could apply state law rules of contract interpretation in an action for damages incurred by an employer as a result of a strike in violation of a collective bargaining agreement. The Supreme Court concluded states do not remain free to apply "individualized local rules when called upon to enforce [collective bargaining] agreements." (*Id.* at p. 103 [82 S.Ct. at p. 576].) The United States Supreme Court explained: "The dimensions of [LMRA section] 301 require the conclusion that substantive principles of federal law must be paramount in the area covered by the statute. Comprehensiveness is inherent in the process by which the law is to be formulated under the mandate of *Lincoln Mills*, requiring issues raised in suits of a kind covered by [LMRA section] 301 to be decided according to the precepts of federal labor policy. [¶] More important, the subject matter of [LMRA section] 301(a) 'is peculiarly one that calls for uniform law.' [Citations.] . . . [¶] The importance of the area which would be affected by separate systems of substantive law makes the need for a single body of federal law particularly compelling. The ordering and adjusting of competing interests through a process of free and voluntary collective bargaining is the keystone of the federal scheme to promote industrial peace. State law which frustrates the effort of Congress to stimulate the smooth functioning of that process thus strikes at the very core of federal labor policy. With due regard to the many factors which bear upon competing state and federal interests in this area, [citations], we cannot but conclude that in enacting [LMRA section] 301 Congress intended doctrines of federal labor law uniformity to prevail over inconsistent local rules." (*Id.* at pp. 103-104 [82 S.Ct. at pp. 576-577], fn. omitted; *Lingle* v. *Norge Division of Magic Chef, Inc., supra,* 486 U.S. at p. 404, fn. 3 [108 S.Ct. at p. 1880].)

The preemptive effect of LMRA section 301 was further considered, in the context of removal jurisdiction, in *Avco Corp.* v. *Aero Lodge 735* (1968) 390 U.S. 557, 558-562 [88 S.Ct. 1235, 1236-1238, 20 L.Ed.2d 126]. In *Avco,* the United States Supreme Court considered an employer's suit to enjoin a breach of a no-strike provision of a collective bargaining agreement. The employer sought relief under state contract law. Additionally, the employer

sought injunctive relief which was available only under state law. The United States Supreme Court held the action arose under federal law, LMRA section 301, therefore the district court had original jurisdiction of the action. (*Ibid.*) As later explained in *Franchise Tax Bd.* v. *Laborers Vacation Trust* (1983) 463 U.S. 1, 23-24 [103 S.Ct. 2841, 2853-2854, 77 L.Ed.2d 420], the "necessary ground of decision" in *Avco* was as follows: "[T]he pre-emptive force of [LMRA section] 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.' Any such suit is purely a creature of federal law . . . . *Avco* stands for the proposition that if a federal cause of action completely pre-empts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law." (Fn. omitted.) As the Supreme Court later observed, under *Avco,* "Within its proper sphere, [LMRA section] 301 has been accorded unusual pre-emptive power." (*Livadas* v. *Bradshaw* (1994) 512 U.S. 107, 122, fn. 16 [114 S.Ct. 2068, 2077, 129 L.Ed.2d 93]; *Miller Brewing* v. *Department of Industry* (1997) 210 Wis.2d 26 [563 N.W.2d 460, 465].) We turn to the question whether the preemptive effect of LMRA section 301 extends to attorney's fee awards in actions to enforce an arbitration award under a collective bargaining agreement. We conclude that it does.

### B. *Federal Law Governs Attorney's Fee Awards in Actions to Enforce Arbitration*

As discussed below, federal and state courts have held the requirement that state courts apply federal law in actions within the purview of LMRA section 301 extends to requests for attorney's fees. We conclude, therefore, that the application of section 1128, in this case, is preempted by federal law.

#### 1. *Federal Courts Have Held the Required Uniformity of Federal Law Extends to Attorney's Fee Awards*

LMRA section 301 does not authorize the granting of attorney's fees. However, consistent with the obligation to develop federal substantive law under LMRA section 301 (*Electrical Workers* v. *Hechler* (1987) 481 U.S. 851, 855 [107 S.Ct. 2161, 2164-2165, 95 L.Ed.2d 791]; *Textile Workers* v. *Lincoln Mills, supra,* 353 U.S. at pp. 456-457 [77 S.Ct. at pp. 917-918]), the courts of appeals have held attorney's fees may be awarded in actions involving the enforcement of arbitration awards under collective bargaining agreements only for conduct that is in bad faith, vexatious, wanton, or oppressive. (E.g., *First Nat. Supermarkets, Inc.* v. *Local 338* (2d Cir. 1997)

118 F.3d 892, 898 [employer action to vacate arbitration award]; *Sheet Metal Workers* v. *Madison Indus.* (9th Cir. 1996) 84 F.3d 1186, 1192 [union sought to vacate arbitration award]; *Local 285* v. *Nonotuck Resource Associates, Inc.* (1st Cir. 1995) 64 F.3d 735, 737 [union suit to compel arbitration]; *Phoenix Newspapers* v. *Phoenix Mailers Local 752* (9th Cir. 1993) 989 F.2d 1077, 1084 [employer sought to vacate arbitration award]; *Rogers* v. *Air Line Pilots Ass'n, Intern.* (5th Cir. 1993) 988 F.2d 607, 615-616 [employee action to enforce arbitration award]; *Actors' Equity Ass'n.* v. *American Dinner Theatre* (8th Cir. 1986) 802 F.2d 1038, 1042 [union motion for attorney's fees incurred in action to compel arbitration]; *Intern. Chemical Workers* v. *BASF Wyandotte Corp.* (2d Cir. 1985) 774 F.2d 43, 47 [union action to confirm and enforce arbitration award]; *United Steelworkers of America* v. *Ideal Cement Co.* (10th Cir. 1985) 762 F.2d 837, 843 [union brought action to enforce arbitration award]; *Wash. Hosp. Center* v. *Service Employees Intern.* (D.C. Cir. 1984) 746 F.2d 1503, 1509 [241 App.D.C. 186] [employer appeal from order compelling arbitration]; *Intern. Union of P.I.W.* v. *Western Indus. Main.* (9th Cir. 1983) 707 F.2d 425, 428 [union action to confirm arbitration award]; *Kane Gas Light & Heating* v. *Intern. Broth., Etc.* (3d Cir. 1982) 687 F.2d 673, 682-683 [employer action to vacate arbitration award]; *International Ass'n of Machinists* v. *Texas Steel* (5th Cir. 1981) 639 F.2d 279, 283-284 [union motion for attorney's fees incurred in obtaining enforcement of arbitration award]; *Painters Loc. U. No. 171, Etc.* v. *Williams & Kelly, Inc.* (10th Cir. 1979) 605 F.2d 535, 538-539 [union suit to enforce arbitration award]; *Fabricut, Inc.* v. *Tulsa General Drivers, Etc.* (10th Cir. 1979) 597 F.2d 227, 230 [employer action to set aside arbitration award].) The federal standard for an attorney's fee award in cases within the purview of LMRA section 301 is derived from *Alyeska Pipeline Co.* v. *Wilderness Society* (1975) 421 U.S. 240, 258-259 [95 S.Ct. 1612, 1622, 44 L.Ed.2d 141]. In *Alyeska Pipeline Co.*, the United States Supreme Court held that absent an authorizing statute or contractual commitment, litigants generally bear their own attorney's fees. However, the Supreme Court noted: "[A] court may assess attorneys' fees . . . when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons . . . .' *F. D. Rich Co.* [v. *United States* ex rel. *Industrial Lumber Co., Inc.* (1974) 417 U.S. 116, 129 [94 S.Ct. 2157, 40 L.Ed.2d 703]] (citing *Vaughan* v. *Atkinson*, 369 U.S. 527 . . . (1962)); cf. *Universal Oil Products Co.* v. *Root Refining Co.*, 328 U.S. 575, 580 [66 S.Ct. 1176, 90 L.Ed. 1447] (1946)." (*Alyeska Pipeline Co.* v. *Wilderness Society, supra*, 421 U.S. at pp. 258-259 [95 S.Ct. at p. 1622].)

The United States Court of Appeals for the Ninth Circuit has held, in a suit filed in the district court under LMRA section 301, that attorney's fees could not be awarded under Civil Code section 1717. In *Waggoner* v.

*Northwest Excavating, Inc.* (9th Cir. 1981) 642 F.2d 333, 338-339, the Ninth Circuit concluded *Alyeska Pipeline Co.* prohibited the district court from awarding attorney's fees under state statutes unless the trial judge's jurisdiction was based on diversity of citizenship. But the Ninth Circuit also held: "[F]ederal labor policy supports the district court's decision to decline to award fees under [Civil Code] section 1717. 'Courts must always evaluate litigation under [LMRA section] 301(a) with an eye to the policy of uniformity which that statute embodies.' [Citation.] Uniformity would be defeated, with few, if any, countervailing benefits, by applying fifty different state laws on the issue of attorney's fees." (*Id.* at p. 339, vacated and remanded on other grounds, *Northwest Excavating, Inc.* v. *Waggoner* (1982) 455 U.S. 931 [102 S.Ct. 1417, 71 L.Ed.2d 640].) *Waggoner* was followed in *Burke* v. *French Equipment Rental, Inc.* (9th Cir. 1982) 687 F.2d 307, 312, a case which also was filed in the district court under LMRA section 301. The Ninth Circuit held *Waggoner* v. *Northwest Excavating, Inc., supra,* 642 F.2d at pages 338-339, precluded an award of attorney's fees pursuant to Civil Code section 1717 against the trustees of a union trust fund. (687 F.2d at p. 312.)

*McKesson Corp.* v. *Local 150* (E.D.Cal. 1991) 795 F.Supp. 338, 343, affirmed on other grounds, *McKesson Corp.* v. *Local 150 IBT* (9th Cir. 1992) 969 F.2d 831, was an employer's action to vacate an arbitration award under LMRA section 301 and a union counterclaim. The union sought to confirm the arbitration award. The union requested an award of attorney's fees under section 1128, the statute at issue in this case. The district court held: It was required to apply federal law in LMRA section 301 cases; the LMRA did not authorize the granting of attorney's fees as permitted by section 1128; and attorney's fees could be awarded under federal law only if the court found "that a party violated [LMRA section] 301 in 'bad faith, vexatiously, wantonly or for oppressive reason.' [Citations.]" (*McKesson Corp.* v. *Local 150, supra,* 795 F.Supp. at p. 343.) The court concluded, "[D]efendant's request for attorney's fees based on state law is denied." (*Ibid.*)

2. *California Decisional Authority Is Consistent With the Federal Cases*

California decisional authority is in accord. In *O'Malley* v. *Wilshire Oil Co.* (1963) 59 Cal.2d 482, 486 [30 Cal.Rptr. 452, 381 P.2d 188], the Supreme Court articulated the following rule: "In the enforcement of provisions of collective bargaining agreements obligating the parties to arbitrate disputes, state courts exercise concurrent jurisdiction with federal courts. [Citation.] In so doing state courts must, however, in adjudicating an action which could have been brought in the federal courts under section 301 of the

[LMRA], apply federal law. [Citation.]" (Accord, *Butchers' Union Local 229* v. *Cudahy Packing Co.* (1967) 66 Cal.2d 925, 931 [59 Cal.Rptr. 713, 428 P.2d 849].)

The law governing attorney's fee awards was discussed in *Carpenters 46 Northern Cal. Counties Conf. Bd.* v. *Jones & Anderson* (1987) 195 Cal.App.3d 1221, 1231-1234 [236 Cal.Rptr. 321]. The appeal in *Carpenters 46* was from a judgment denying the union's petition for confirmation of an arbitration award against the employer. (*Id.* at p. 1224.) The Court of Appeal held the trial judge erred in awarding attorney's fees to the employer under Civil Code section 1717. (195 Cal.App.3d at p. 1232.) The discussion was as follows: "[The union] contends that attorneys' fees may not be recovered under this state statute without impermissibly undermining uniformity in the application of federal labor law. [Citations.] We agree. [¶] *Burke* v. *French Equipment Rental, Inc.*, *supra*, 687 F.2d 307 and *Waggoner* v. *Northwest Excavating, Inc.*, *supra*, 642 F.2d 333, are dispositive of the issue." (*Ibid.*) The court further stated: "[The union] also argues, and again we agree, that attorneys' fees are available under section 301 of the [LMRA] only 'when the losing party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons . . . ."' (*Alyeska Pipeline Co.* v. *Wilderness Society*, *supra*, 421 U.S. 240, 258-259 . . . .)" (*Id.* at pp. 1232-1233.) The Court of Appeal concluded there was no indication of bad faith by the union; therefore, it found no basis for the superior court's attorney's fees award. (*Id.* at pp. 1233-1234.)

*Carpenters Health & Welfare Trust Fund* v. *Acme Industries, Inc.* (1990) 224 Cal.App.3d 187, 188-190 [273 Cal.Rptr. 519], is to the same effect. The appeal challenged an award of attorney's fees pursuant to Civil Code section 1717. The court cited *Teamsters Local* v. *Lucas Flour Co.*, *supra*, 369 U.S. at pages 103-104 [82 S.Ct. at pages 576-577], for the proposition that "[i]n state court litigation, incompatible doctrines of state law are preempted due to the need for uniformity." (*Carpenters Health and Welfare Trust Fund* v. *Acme Industries, Inc.*, *supra*, 224 Cal.App.3d at p. 189.) The court concluded: "Attorney fees are available in litigation under section 301 of the LMRA only when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. (See *Alyeska Pipeline Co.* . . . .) There is no federal rule comparable to Civil Code section 1717 for reciprocal recovery of attorney fees in LMRA cases. Consequently, in state court litigation between parties to a collective bargaining agreement, Civil Code section 1717 is preempted. (*Carpenters 46 Northern Cal. Counties Conf. Bd.* v. *Jones & Anderson*[, *supra*,] 195 Cal.App.3d [at p.] 1232 . . . .) ' "Uniformity would be defeated, with few, if any, countervailing benefits, by

applying fifty different state laws on the issue of attorney's fees." ' (*Ibid.*, quoting *Waggoner* v. *Northwest Excavating, Inc.*[, *supra*,] 642 F.2d [at pp.] 338-339 . . . .)" (*Carpenters Health & Welfare Trust Fund* v. *Acme Industries, Inc.*, *supra*, 224 Cal.App.3d at pp. 189-190.)

In *National Marble Co.* v. *Bricklayers & Allied Craftsmen* (1986) 184 Cal.App.3d 1057, 1060 [229 Cal.Rptr. 653], the employer appealed from an order denying its petition to vacate an arbitration award and granting a request to confirm the award. The employer argued it was entitled to an award of attorney's fees for bringing its petition to vacate the award. Division Seven of the Court of Appeal for this appellate district, in an opinion by Presiding Justice Mildred Lillie, applied federal law and found no abuse of discretion by the trial judge in the refusal to award attorney's fees to the employer. (*Id.* at p. 1068.)

The only decisional authority in California awarding attorney's fees under section 1128 is *Screen Actors Guild* v. *A. Shane Co.* (1990) 225 Cal.App.3d 260, 269 [275 Cal.Rptr. 220].) In that case, Division Four of this appellate district awarded attorney's fees pursuant to section 1128 without discussing the application of federal law or whether the state statute was preempted. (225 Cal.App.3d at p. 269.) However, no issue was raised concerning the preemptive effect of LMRA section 301 in *Screen Actors Guild*. *Screen Actors Guild* has not been cited in any other decision of any court. Because the issue of the preemptive effect of LMRA section 301 was neither raised nor discussed in *Screen Actors Guild*, it is not authority for the proposition that the attorney fee award in this case may be upheld given the specific preemption arguments presented in the trial court and to us on appeal by the union. (*Amwest Surety Ins. Co.* v. *Wilson* (1995) 11 Cal.4th 1243, 1268 [48 Cal.Rptr.2d 12, 906 P.2d 1112]; *Ginns* v. *Savage* (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689].)

### 3. *Decisions From Other States Are Consistent*

There is decisional authority from other states that is consistent with the California and federal cases. *Arizona Laborers, Teamsters, Etc.* v. *Hanlin* (1985) 148 Ariz. 23 [712 P.2d 936, 943-944], was an action by union trust funds to recover from an employer contributions required by a collective bargaining agreement. The employer prevailed at trial and recovered attorney's fees. The Court of Appeals of Arizona held "that the trial court erred in awarding [the employer] attorney's fees under A.R.S. [Arizona Revised Statutes, section] 12-341.01 because that is inconsistent with federal labor policy in which uniformity of results under [LMRA section] 301 is of

paramount importance." (712 P.2d at p. 944.) The Arizona Court of Appeals held: "We agree with the trust funds that an award of attorney's fees under a state statute is inconsistent with the federal goal of uniformity in labor policy. *Waggoner* involved an action by union trust funds to recover unpaid employer contributions. The trust funds prevailed and sought attorney's fees under a state statute similar to A.R.S. [section] 12-341.01 which permitted the award of fees in actions arising out of contract. The district court denied the request, citing *Alyeska Pipelines.* The trust funds appealed, arguing that the award of fees was permitted under *Textile Workers' Union* v. *Lincoln Mills,* 353 U.S. 448, 457 . . . (1957), which, as previously discussed, allows federal courts to apply state laws compatible with [LMRA section] 301 in order to best effectuate federal policy. The Ninth Circuit held that *Alyeska* imposed strict limits on federal courts, but also concluded that federal labor policy supported denial of an award of fees in any case. The court explained that litigation under [LMRA section] 301 must always be approached in light of the policy of uniformity embodied by that statute, pointing out that the policy would be defeated with few benefits if different state laws were applied. We are persuaded by this reasoning and reverse the trial court's award of attorney's fees." (*Arizona Laborers, Teamsters, Etc.* v. *Hanlin, supra,* 712 P.2d at p. 943, fn. omitted; see also *Madison Teachers* v. *Wis. Emp. Relations Com'n.* (1983) 115 Wis. 2d 623 [340 N.W.2d 571] [an award of attorney fees would be improper absent bad faith after the conclusion of a collective bargaining arbitration]; *Sergeant Bluff-Luton* v. *Sergeant Bluff-Luton* (Iowa 1979) 282 N.W.2d 144, 150-151 [applying both the federal attorney's fee standard and a more restrictive state standard].) Similarly, in *Paddack* v. *Furtick* (1986) 78 Or.App. 49 [714 P.2d 1068, 1070], the Oregon Court of Appeals held, citing *Waggoner* v. *Northwest Excavating, Inc., supra,* 642 F.2d at pages 338-339, that the state's reciprocal attorney's fee statute did not provide a basis for an award of legal expenses in an action brought under LMRA section 301.

The employer contends LMRA section 301 "only preempts state law that affects the interpretation of the collective bargaining agreement." It further asserts that enforcing section 1128 "does not affect the [parties'] substantive rights under the collective bargaining agreement, nor does it interfere or conflict with federal labor law." However, the cases cited in support of that proposition did not involve claims founded directly on rights and duties to arbitrate established in a collective bargaining agreement and therefore arising under LMRA section 301. (*Livadas* v. *Bradshaw, supra,* 512 U.S. at pp. 124-125 [114 S.Ct. at pp. 2078-2079] [California Labor Code section 203, authorizing assessment of a penalty for failure to timely pay wages owed upon discharge of employee, not preempted by LMRA section 301

because collective bargaining agreement irrelevant to dispute]; *Lingle* v. *Norge Division of Magic Chef, Inc., supra*, 486 U.S. at p. 407 [108 S.Ct. at p. 1882] [retaliatory discharge cause of action under Illinois law not preempted by LMRA section 301 because its resolution did not turn on the meaning of any provision of collective bargaining agreement]; *Allis-Chalmers Corp.* v. *Lueck, supra*, 471 U.S. at pp. 220-221 [105 S.Ct. at pp. 1915-1916] [insurance bad faith claim under Wisconsin law preempted by LMRA section 301 because resolution of claim was substantially dependent on analysis of terms of collective bargaining agreement]; *Contract Services Network, Inc.* v. *Aubry* (9th Cir. 1995) 62 F.3d 294, 299 [California statutory requirement that employers provide workers' compensation coverage through separately administered employee benefit plans did not involve rights established in a collective bargaining agreement]. None of the cited cases involved, as here, an action founded directly on: a dispute over the terms of a collective bargaining agreement; an arbitration conducted in compliance with the terms of the collective bargaining agreement; and post-award litigation concerning the scope of the arbitrator's powers under the collective bargaining agreement. As discussed above, in such cases which arise under LMRA section 301, federal substantive law governs and must be uniformly applied.

### C. The Legislature, in Adopting Section 1128, Recognized the Possibility of Federal Preemption

It is noteworthy that legislative committee analysis of Senate Bill No. 2322 (1983-1984 Reg. Sess.), enacted as section 1128, recognized the possibility of federal preemption. In an analysis of the bill as amended on April 24, 1984, by the Assembly Committee on the Judiciary, the author advised, "Some question may arise as to whether this bill is preempted by federal law." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 2322 (1983-1984 Reg. Sess.) as amended Apr. 24, 1984, p. 3.) The analysis concluded, however, that question "should be answered in the negative." (*Ibid.*) It was there stated: "The provisions of this bill do not appear to be necessarily preempted under [*Textile Workers* v.] *Lincoln Mills* because (1) the proposed sanctions would not affect the outcome of any action (i.e., are not inconsistent with uniform federal substantive law) and (2) the bill could be deemed compatible with federal substantive law (i.e., the bill furthers federal policy favoring arbitration and thus may be 'absorbed' as federal law)." (*Id.* at p. 4.) Analysis by the Senate Committee on Judiciary reached the same conclusion. (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 2322 (1983-1984 Reg. Sess.) pp. 5-7.) It was there concluded the provisions of Senate Bill No. 2322 were not substantive "as they would not affect the outcome of any action." (Sen. Com. on Judiciary, Analysis of Sen. Bill No.

2322, *supra*, at p. 7.) The author noted, however, "Nothing in this bill would prevent a party defending a motion to compel or appealing an arbitrator's decision from removing the case to federal district court (which has concurrent jurisdiction), thereby avoiding the provisions of this bill." (*Id.* at p. 9.)

With greatest respect to the legislative committees, we are unpersuaded by the reasoning appearing in the reports as applied to this case. The provisions of section 1128, as applied in this case, are inconsistent with federal substantive law which, as discussed above, authorizes attorney's fees in actions within the purview of LMRA section 301 only when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. Further, it is the federal courts, under *Textile Workers* v. *Lincoln Mills, supra*, 353 U.S. at pages 456-457 [77 S.Ct. at 917-918], which must determine the substantive law, including whether consistent state law should be "absorbed" as federal law. *Lincoln Mills* does not authorize state Legislatures to enact laws on the theory they could be absorbed as federal law. Moreover, *Lincoln Mills* precludes the application of state law as "an independent source of private rights." (*Id.* at p. 457 [77 S.Ct. at p. 918].) The legislative committee analysis does not warrant a different result in this case.

## D. *Conclusion*

We conclude section 1128 is preempted by federal law in this case which involves: a dispute over the terms of a collective bargaining agreement; an arbitration conducted in compliance with the terms of a collective bargaining agreement; and post-award litigation concerning the scope of the collective bargaining agreement and the arbitrator's powers thereunder. A state court deciding a case within the purview of LMRA section 301 must apply the substantive law developed in federal decisions, including the rule that attorney's fees may be awarded only when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons. Further, in the present case, there has been no assertion or finding, consistent with the federal standard, that the union acted in bad faith, vexatiously, wantonly or for oppressive reasons. Under the employer's theory, parties to a collective bargaining agreement in California can expect to incur a prevailing adversary's legal costs if an arbitration award is litigated in state court even if there is no bad faith or the like. However, in all other federal and state courts, attorney fees are recoverable in litigation challenging an arbitration award directly resulting from a collective bargaining agreement only in the face of bad faith or the other proscribed conduct identified in *Alyeska Pipeline Co.* v. *Wilderness Society, supra*, 421 U.S. at pages 258-259 [95 S.Ct. at page 1622]. Such a state of affairs cannot be construed as a uniform

application of federal labor law. Accordingly, we reverse the order awarding attorney's fees to the employer pursuant to section 1128.

## IV.  DISPOSITION

The order awarding attorney's fees to the employer, Hugo Neu Proler Company, pursuant to Labor Code section 1128, is reversed. The union, Warehouse, Processing, Distribution Workers Union, Local 26, is to recover its costs on appeal from the employer, Hugo Neu Proler Company.

Armstrong, J., and Godoy Perez, J., concurred.